**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**MARCH SESSION, 1999**

FILED

May 14, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 01C01-9712-CC-00594** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **DICKSON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. ALLEN W. WALLACE,** |
| **RODERICK S. WILLIAMS,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Probation Revocation) |

ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF DICKSON COUNTY

FOR THE APPELLANT:

JOSEPH L. HORNICK
98 Church Street, Suite 1
Dickson, TN 37055

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

CLINTON J. MORGAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

DAN ALSOBROOKS
District Attorney General

ROBERT WILSON
Assistant District Attorney General
P.O. Box 580
Charlotte, TN 37036

OPINION FILED _____

REVERSED AND REMANDED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Roderick S. Williams, appeals as of right from the trial court's order revoking his probation and remanding him to the Tennessee Department of Correction to serve his eight-year sentence in confinement for Class B theft of property. The Defendant contends that the trial court erred by revoking his probation when the court (1) based its determination solely on his failure to pay restitution, and (2) failed to find on the record that he willfully refused to make payments and that no suitable alternative to revocation existed. We agree, and we reverse the revocation of probation and remand this case to the trial court for reinstatement of the Defendant's probation.

On September 21, 1995, the Defendant pleaded guilty to and was convicted of Class B felony theft. The agreed sentence was eight years in the Department of Correction, to be served in community corrections "with Court's permission to be transferred to California for Community Corrections." The judgment also stated that there was to be a hearing to determine the amount of restitution. This judgment was entered on September 22, 1995. On September 29, 1995, the court entered an "agreed order of restitution." This order appears to incorporate an agreement of the parties that restitution be set at $150,000. The order did not provide for a schedule of periodic payments, nor did the order reflect the time frame within which restitution was to be made. A community corrections order was also entered on September 29, 1995. This order contained a provision that the Defendant would "pay all court costs, fines and restitution as outlined in the behavioral contract." The order also granted the Defendant

permission to be "transferred to California to live and be supervised on community corrections." On the same day, a "community corrections transfer order" was entered which transferred the Defendant to the "Tennessee Department of Corrections probation."

On March 3, 1997, a probation violation warrant was issued alleging that the "Defendant was told to make court and restitution payments monthly to the Court. The last payment was paid on November 14, 1996 to Circuit Court." On November 25, 1997, the trial court conducted a hearing on the probation revocation warrant, found that the Defendant had violated the terms of his probation, and ordered his eight-year sentence served in the Tennessee Department of Correction. It is from this order that the Defendant appeals.

As a preliminary issue, we address and reject the Defendant's argument that the trial court erred by allowing a transfer of his supervision from Community Corrections to Department of Correction probation. We find that the issue is waived for failure to appeal the transfer at the time it occurred, in 1995. Furthermore, it appears from the record before us that the transfer was effectuated to facilitate the Defendant's move from Tennessee to California, which we assume the Defendant requested. He may not now challenge the transfer's validity.

With respect to the propriety of the Defendant's revocation, both the granting and denial of probation rest in the sound discretion of the trial judge. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Moreover, the trial judge has the discretionary authority to revoke probation if a preponderance

of the evidence establishes that a defendant violated the conditions of probation. The trial judge must, however, adduce sufficient evidence during the probation revocation hearing to permit an intelligent decision. Id. The determination made by the trial court, if made with conscientious judgment, is given the weight of a jury verdict and entitled to affirmance. Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980).

When a probation revocation is challenged, this Court has a limited scope of review. The judgment of the trial court revoking probation will not be disturbed on appeal unless it appears that the trial court acted arbitrarily or otherwise abused its discretion. State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). "For this Court to find an abuse of discretion by the trial court in a probation revocation case, a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); State v. Gabel, 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995); see also State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (dicta).

When the alleged violation of probation is failure to pay restitution or court costs, the court must inquire into the reasons for such nonpayment. Bearden v. Georgia, 461 U.S. 660, 672 (1983). To issue an order of revocation, the trial court must affirmatively find on the record (1) that a defendant's failure to pay was willful; and (2) that alternatives to imprisonment were inadequate to meet the State's interests in punishing the offender, deterring others from similar conduct and insuring the payment of restitution to victims. State v. Dye, 715 S.W.2d 36,

41 (Tenn. 1986). "Pursuant to Bearden, '[u]nless such determinations are made . . . , fundamental fairness requires that the [defendant] remain on probation.'" Id. (quoting Bearden, 461 U.S. at 674) (both alterations in Dye). This holding is subject to a caveat: If a defendant was "'somehow responsible'" or "'at fault in failing to pay,'" then application of Bearden is improper. Id. at 40 (quoting Bearden, 461 U.S. at 665, 668).

At the probation revocation hearing, the State elicited testimony from a probation officer that she was the Defendant's probation officer for "one day" prior to the transfer of his supervision to California. She testified that she talked to the Defendant about court costs and restitution payments, and she testified that these payments were supposed to be paid monthly. She testified that she did not know how much the restitution order included "because when [the Defendant] got put on probation that day it was $316.00 and [the judge and attorneys] were going to determine the restitution." The Defendant testified that he understood he was supposed to pay $100 per month.

In this case, the State produced some evidence showing that a condition of the Defendant's probation required him to pay $100 per month in restitution and court costs.[1] The State further presented records from the court clerk's office demonstrating that the Defendant failed to make a payment between November 14, 1996 and March 3, 1997.[2] This was the solitary ground supporting a violation

---

[1] The total sum of restitution and court costs the Defendant is required to pay to the court equals $152,537.

[2] The warrant charging the Defendant with a probation violation was issued on March 3, 1996. Following issuance of the warrant, but before the Defendant was arrested, the Defendant paid an additional $150. Finally, after his arrest but prior to his revocation hearing, the Defendant paid an additional $1050.

of the Defendant's probation. In response, the Defendant asserted that he had been unemployed for a period of time and that his mother had been diagnosed with cancer, preventing him from making regular payments because of the costs of her treatment.

Our review of the revocation hearing below offers us little insight into the trial court's determination on the issue of willfulness. The trial court failed to make specific, formal findings as to whether the Defendant willfully refused to pay and as to the suitability of alternatives to revocation. Therefore, according to Bearden and Dye, fundamental fairness requires reinstatement of the Defendant's probation.

Moreover, we conclude that even if the trial court had made a specific finding of willfulness, such a finding would not have been supported by any substantial evidence. The proof revealed that the Defendant was required to pay a total of $152,537 as a condition of his eight-year probation. Further, the Defendant had been advised by a probation officer to make a $100 payment per month. Had the Defendant paid $100 per month for eight years, his total repayment would have equaled only $9600. Rather than pay the scheduled amount, the Defendant sent payments of $150 each. The court clerk's records show that he made these $150 payments in May, July, August, and November of 1996. In September of 1996, the Defendant made two $150 payments; and in October, he made a payment of $1155. The Defendant made no payment in December of 1996 or January of 1997, but the clerk credited him with a payment on March 3, 1997. Regarding this March payment, the Defendant produced

return-receipt postage slips marked February 18 and February 28 to show that he had made this payment (credited March 3) in February.

This proof simply does not support the State's argument that the Defendant failed to pay for seven to nine months. Furthermore, the proof would not support a finding of willful failure to pay. Neither this Court nor the trial court may consider proof succeeding the date a probation violation warrant was issued to determine whether a violation occurred. State v. Sacra, No. 88-278-III, 1989 WL 71037, *2 (Tenn. Crim. App., Nashville, June 29, 1989). In order to find that the Defendant failed to pay for seven to nine months, the trial court would necessarily have considered the months following issuance of the Defendant's violation warrant. This would have constituted an abuse of discretion. See Sacra, 1989 WL 71037, at *2 ("[T]he trial court's reliance upon facts which succeeded the issuance of the probation revocation warrant is a patent and arbitrary abuse of discretion.").

The proof prior to March 3, 1997—the violation warrant issuance date—shows that the Defendant failed to make December 1996 and January 1997 payments toward his court costs and restitution. In addition, between the dates of May 1996 and March 1997, the Defendant paid a total of $2205. Had the Defendant made the scheduled $100 payments toward his debt for the same time period, he would have paid a total of $1000. The Defendant clearly made a good faith effort to honor his debt; but, as he testified at his revocation hearing, he was unable to pay for various reasons including unemployment and family medical hardship.

At the conclusion of the proof at the probation revocation hearing, the assistant district attorney stated, "[W]ell, your honor, obviously it was a mistake to enter into the plea where he was going to pay $150,000.00. So you can just go on and violate him and be done with it because otherwise we'll be back here every six months." While the trial court rejected the argument that the Defendant's probation should be violated simply because the restitution order was unrealistic, it is apparent from the record that the trial judge agreed that it was unrealistic to expect the Defendant to be able to make restitution in the amount of $150,000. It appears to this Court that this should have been obvious at the time the plea was entered. Nevertheless, the State agreed that the Defendant's eight-year sentence would be served on probation subject to payment of restitution in the amount of $150,000. No payment schedule was included in any court order. The Defendant's probation officer was unaware of the total amount of restitution ordered in this case. It is apparent that no one expected the Defendant to be able to pay the $150,000 in lump sum. The Defendant and his probation officer apparently agreed that he could pay $100 or $150 per month.

It may be that to reinstate the Defendant's probation after he has been in the penitentiary for over one and one-half years will only increase the confusion in his case. Nevertheless, we do not believe that this record supports a finding that the Defendant willfully failed or refused to comply with court-ordered restitution. For these reasons, we reverse the revocation of the Defendant's probation. We remand this case to the Criminal Court for Dickson County to enter an order reinstating his probation and for such other proceedings as may be appropriate.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JOE G. RILEY, JUDGE


_____
JOHN EVERETT WILLIAMS, JUDGE