IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 2000 SESSION

## STATE OF TENNESSEE, v. LORI RAY.

**Direct Appeal from the Circuit Court for Dyer County**
**No. C91-371, 372, 390A, 391A, C96-25     Lee Moore, Judge**

---

**No. W1999-00641-CCA-R3-CD - Decided April 20, 2000**

---

The defendant/appellant, Lori Reeves Ray, appeals as of right from the revocation of her probation by the Dyer County Circuit Court. The defendant presents one appellate issue: Whether the trial court abused its discretion by revoking the defendant's probation where there is no evidence the defendant's non-compliance was due to willful and deliberate refusal to make payments as ordered by the trial court.

**T.R.A.P. 3; Judgment of the Circuit Court is Affirmed.**

LAFFERTY, SR. J., delivered the opinion of the court, in which TIPTON, J., and WELLES, J., joined.

C. Michael Robins, Memphis, Tennessee, Jim W. Horner and H. Tod Taylor, Dyersburg, Tennessee, for the appellant, Lori Ray.

Paul G. Summers, Attorney General and Reporter, and J. Ross Dyer, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

Since the defendant and the State have had an adversarial history in attempting to have the defendant comply with the conditions of probation, it is necessary to set forth the historical facts in the record leading to the present issue.

Pursuant to a plea agreement on December 10, 1991, the defendant (under the name of Lori Reeves Taylor), was sentenced to two (2) years in the Department of Correction for twelve (12) counts of forgery. The Dyer County Circuit Court placed the defendant on two (2) years of supervised probation after serving thirty (30) days for drug rehabilitation. The defendant was ordered to make restitution to various businesses in Dyer County. On October 26, 1993, the trial court signed an arrest warrant for the revocation of the defendant's probation on the grounds that she failed to pay restitution as ordered by the trial court. The defendant failed to pay approximately two thousand dollars ($2,000) in nine (9) months. On December 23, 1993, the defendant paid five

hundred dollars ($500), and the trial court extended her probation for an additional two (2) years, to expire December, 1995, with the condition that she pay fifty dollars ($50) a month.

On December 19, 1995, a probation violation report was filed with the trial court reflecting that the defendant had been arrested in Tipton County for DUI, driving on a revoked license, public drunkenness, and reckless driving. On February 12, 1996, the Dyer County Grand Jury indicted the defendant and Lisa Gail Sipes for three (3) counts of aggravated burglary and three (3) counts of theft occurring in December, 1995. A second probation violation report was filed with the trial court on March 19, 1996, setting forth the complaint of the defendant's arrests for aggravated burglary and theft. Also, the defendant owed six hundred eighty-one dollars ($681) in restitution.

On March 26, 1996, the defendant (under the name of Lori Ann Reeves), pled guilty to aggravated burglary and received sentences of four (4) years and six (6) months in the Department of Correction to run concurrently. The defendant agreed to the revocation of her probation of two (2) years for the offenses of forgery to be served concurrently. On July 26, 1996, the trial court ordered that the defendant's place of confinement be re-designated as community corrections for the offenses of aggravated burglary and forgery. The defendant was ordered to enter a drug and alcohol treatment program in the Jack Gean Shelter for Women in Hardin County, Tennessee. On July 11, 1997, Westgate Corrections Network, the supervising agency for the defendant, filed a violation petition with the trial court alleging that the defendant admitted to using cocaine and alcohol in April, 1997. In addition, in April and May, the defendant failed to meet her house arrest conditions, and the defendant failed to meet three (3) times with her case officer in June, 1997. On August 14, 1997, the trial court revoked the defendant's placement in the community correction program and ordered all of the defendant's original sentences to be served in the Department of Correction.

On December 2, 1997, the defendant was placed on supervised probation for a period of four (4) years and six (6) months, with certain special conditions, including payment of three thousand seven hundred eighty-four dollars ($3,784) and court costs at the rate of two hundred dollars ($200) per month beginning January 1, 1998. On March 26, 1999, a probation violation report was filed by the State, alleging technical grounds as the type of violation.

## REVOCATION HEARING

On August 3, 1999, Beth Cashion, a probation officer, testified that she assumed supervision of the defendant in July, 1998, regarding the cases involving aggravated burglary and forgery. Ms. Cashion testified that the defendant was released from the Dyer County jail in December, 1997, and was to pay three thousand seven hundred eighty-four and 48/100 dollars ($3,784.48) as restitution in cause No. C96-25, the aggravated burglary offenses. Ms. Cashion identified a clerk's printout reflecting that the defendant paid two (2) two hundred dollar ($200) payments on January 26, 1998, and February 26, 1998. On May 11, 1998, the defendant paid forty dollars ($40), and on July 17, 1998, she paid twenty dollars ($20). Ms. Cashion agreed that the defendant could not pay restitution if she were incarcerated. Ms. Cashion testified that the defendant advised her that she was laid off from work in July of 1998 due to hospital surgery. The defendant had two (2) difficult pregnancies.

Ms. Cashion stated that Lamar Agee told her that if the defendant showed up after the hearing, he would give her employment that evening.

The defendant testified that in July, 1998, she had a tubal pregnancy that ruptured and required hospitalization. She lost the baby and almost died. She stated that she was laid off in June, 1998, for six (6) to eight (8) weeks. In September, 1998, the defendant was eligible for work, but she became pregnant again, and this baby was born prematurely on April 13, 1999.

Between September, 1998, and April, 1999, the defendant stated that she put in applications at various businesses and had a job as of the date of the hearing with Lamar Agee. The defendant agreed that she made two (2) payments of two hundred dollars ($200), but that she could no longer afford that much, so she paid what she could. The defendant testified that she saw her probation officer regularly and that the reason she was unable to pay was because of her tubal pregnancy and her new child.

In cross-examination, the defendant admitted her history of probation violations and that she was aware she must pay two hundred dollars ($200) a month in restitution and court costs. The defendant testified that upon her release in December, 1997, she moved to Greenfield, Tennessee, and worked in a convenience store until she returned to Dyer County, in approximately April, 1998. The defendant acknowledged that she did not pay anything in March, April, and June, 1998.

Pam Gladden, mother of the defendant, testified that her daughter developed a tubal pregnancy in 1998. Upon her daughter's release from the hospital, the defendant could not work for six (6) to eight (8) weeks. However, her daughter became pregnant again, and this child was born in April, 1999. Mrs. Gladden stated that her daughter lived with her, and she assisted the defendant in filling out applications for employment. She stated that the defendant moved back in with her when she left Greenfield, Tennessee. Mrs. Gladden testified that since 1991, her daughter's longest length of employment was approximately six (6) months for World Color Press, but she could not remember what year. She stated that after her daughter's release in December, 1997, the defendant's longest term of employment was for two (2) months in Greenfield, Tennessee.

## LEGAL ANALYSIS

The defendant asserts that the trial court made no findings of facts in determining that the defendant willfully refused to pay restitution and court costs. Further, the trial court considered past violations of the defendant's probation terms to sentence the defendant to confinement. The State counters that the defendant's failure to make restitution and pay court costs over an eight (8) year period was sufficient grounds for revocation of probation.

A trial court may revoke probation and order the imposition of the original sentence or sentences upon a finding by a preponderance of the evidence that a person has violated the conditions of probation. Tenn. Code Ann. § 40-35-311 (Supp. 1998). The judgment of the trial court will not be disturbed on appeal unless there has been an abuse of discretion by the trial court. *State v. Harkins,* 811 S.W.2d 79, 82 (Tenn. 1991). For this Court to find an abuse of discretion by

the trial court in a probation revocation case, a defendant must demonstrate "'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" *State v. Wall,* 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994)(quoting *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); *See also State v. Gabel,* 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995).

When the alleged violation of probation is failure to pay restitution or court costs, the trial court must inquire into the reasons for such non-payment. *Bearden v. Georgia,* 461 U.S. 660, 672, 103 S. Ct. 2064, 2073, 76 L. Ed. 2d 221 (1983). To issue an order of revocation, the trial court must affirmatively find on the record: (1) that a defendant's failure to pay was willful; and (2) that alternatives to imprisonment were inadequate to meet the State's interests in punishing the offender, deterring others from similar conduct, and ensuring the payment of restitution to victims of crime. *State v. Dye,* 715 S.W.2d 36, 41 (Tenn. 1986). "Pursuant to *Bearden,* 'unless such determinations are made . . ., fundamental fairness requires that the (defendant) remain on probation.'" *Id.* (quoting *Bearden,* 461 U.S. at 674). This holding is subject to a caveat: if a defendant was "somehow responsible" or "at fault in failing to pay," then application of *Bearden* is improper. *Id.* at 40; *State v. Roderick S. Williams,* No. 01C01-9712-CC-00594, 1999 WL 304306, at *2 (Tenn. Crim. App. May 14, 1999).

At the conclusion of the revocation hearing, the trial court found that the defendant "used up all the alternatives to jail, she's made very little effort over an eight (8) year period to make restitution, pay restitution and her court costs." The trial court entered an order finding that the defendant willfully failed to comply with the terms and conditions of probation in not paying two hundred dollars ($200) per month on her restitution and court costs as ordered.

We find that the record supports the trial court's revocation of probation. The record reflects that since 1991, the defendant has a history of refusing to pay restitution or court costs, which caused the State in 1993 to seek revocation of her probation. The trial court extended the defendant's probation for two (2) years, during which period the defendant did make some reduction in her restitution on the forgery offenses. However, due to the defendant's commission of aggravated burglaries and a DUI, the defendant's probation was revoked, and she was sentenced to community corrections. The defendant's placement in community corrections was revoked for non-compliance, in that the defendant used drugs, failed to report to her case worker, and did not comply with house arrest terms. After a period of confinement, the defendant was placed back on supervised probation with the specific requirement to pay two hundred dollars ($200) a month toward restitution and court costs. Between January 1, 1998, and August 3, 1999, the record reflects that the defendant paid a total of four hundred sixty dollars ($460) toward a restitution amount of three thousand seven hundred eighty-four dollars ($3,784). The defendant explained that her inability to make payments was due to her pregnancy and non-employment. The record is somewhat confusing, in that the defendant worked for two (2) months in Greenfield, Tennessee, before she lost her job, but in her testimony she stated that she was laid off in June, 1998. It could be inferred that the defendant was employed somewhere between December, 1997, and June, 1998. Everything being equal, we agree with the defendant that her pregnancies could cause a disruption in making restitution payments.

Applying the principles as set forth in *Bearden v. Georgia,* and *State v. Dye,* we agree that alternatives to confinement have been unsuccessful in punishing the defendant or impressing upon her the necessity of complying with the conditions of probation. As to the allegation of willful non-compliance, evidently the trial court was not satisfied with the defendant's explanation as to why she could not make some payments over the eighteen (18) months between January, 1998, and August, 1999. In probation revocation hearings, the credibility of the witnesses is for the trial judge to determine, and the lower court's findings are accorded the weight of a jury verdict. *State v. Wall,* 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994). We find that the evidence in the record does not preponderate against the trial court's discretion in revoking the defendant's probation.

The trial court's judgment is affirmed.