# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
FEBURARY 2000 Session
## STATE OF TENNESSEE v. MICHAEL BYRD

**Direct Appeal from the Circuit Court for Giles County**
**No. 7243      Jim T. Hamilton, Judge**

---

**No. M1999-00456-CCA-R3-CD- Filed August 31, 2000**

---

On February 13, 1996, the appellant was convicted of attempted aggravated child abuse, a class C felony, pursuant to his plea of nolo contendere in the Giles County Circuit Court. The trial court imposed a sentence of six years incarceration in the Tennessee Department of Correction, suspending the appellant's sentence and ordering an equal term of participation in the local community corrections program. On March 3, 1999, the trial court revoked the appellant's community corrections sentence, and the appellant now challenges the revocation and his consequent incarceration in the Department of Correction. Following a review of the record and the parties' briefs, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES, J., AND JERRY L. SMITH, J.J., joined.

Beverly J. White, Assistant District Public Defender, for the appellant, Michael Byrd.

Paul G. Summers, Attorney General and Reporter, Todd R. Kelley, Assistant Attorney General, and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

## OPINION
The appellant, Michael Byrd, appeals the trial court's revocation of his community corrections sentence and his consequent incarceration in the Tennessee Department of Correction. Specifically, the appellant contends that the trial court abused its discretion in revoking his community corrections sentence on the bases of the appellant's violation of his curfew and his failure to maintain telephone service at his residence for purposes of electronic monitoring. Moreover, the appellant contends that, to the extent the trial court revoked his alternative sentence on the basis of his failure to maintain telephone service at his residence, he was denied the equal protection of the laws. Following a review of the record and the parties' briefs, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.

**I.**

On February 13, 1996, the appellant was convicted of attempted aggravated child abuse pursuant to his plea of nolo contendere in the Giles County Circuit Court. The trial court imposed a sentence of six years incarceration in the Tennessee Department of Correction, suspending the appellant's sentence and imposing an equal period of participation in the local community corrections program. On May 29, 1996, the trial court revoked the appellant's community corrections sentence due to threatening statements made by the appellant concerning an assistant district attorney general who had prosecuted his case. However, on May 1, 1998, this court reversed the trial court's judgment and ordered the reinstatement of the appellant's community corrections sentence "under such additional terms and conditions as the trial court may require." State v. Byrd, No. 01C01-9609-CC-00411, 1998 WL 216859, at *10 (Tenn. Crim. App. at Nashville, May 1, 1998). In reversing the trial court's judgment, this court concluded that, although the appellant's statements concerning the assistant district attorney general "are cause for serious concern, because they reflect a lack of remorse for his crimes and raise doubts as to whether the defendant possesses rehabilitative qualities," the statements did not constitute a violation of specific conditions of the community corrections program nor, generally, a violation of the laws of this state. Id. at **6-7.

On August 3, 1998, pursuant to this court's mandate, the trial court reinstated the appellant's community corrections sentence and, in addition to requiring the appellant to follow all of the rules set forth in his "behavioral contract" with the community corrections program, imposed a curfew on the appellant and ordered the appellant to stay away from the victim in his case and the assistant district attorney general who was the subject of his threatening statements. According to the appellant's community corrections case officer, Melanie Rice, the court "stressed that [the appellant] needed to be supervised."

Subsequently, on January 14, 1999, the trial court issued another revocation warrant on the basis of an affidavit by Ms. Rice alleging the appellant's failure to abide by his curfew and his failure to maintain an operational telephone at his residence for purposes of electronic monitoring. The trial court conducted a revocation hearing on February 17, 1999.

At the revocation hearing, testimony adduced by the State, including testimony by Ms. Rice, officers of the Pulaski Police Department, and an employee of Favorite Market in Pulaski, established that the appellant had violated his curfew by frequenting the Favorite Market both late at night and during early morning hours. Indeed, testimony established that, on at least one occasion in October 1998, the appellant lingered at the market from midnight until 3:00 a.m. On another occasion in November 1998, the appellant stayed at the market from 3:00 a.m. until 6:45 a.m. The appellant was ultimately barred from the market due to his persistent harassment of an employee.

Ms. Rice also testified at the revocation hearing that the appellant's behavioral contract required that the appellant be electronically monitored, at a minimum, during the first ninety days of his participation in the community corrections program. However, according to Ms. Rice, the appellant did not fully cooperate in obtaining telephone service at his residence, which service was necessary for electronic monitoring. Moreover, although the appellant finally installed an

operational telephone in October 1998, his telephone service was disconnected on several occasions. According to Ms. Rice, the appellant explained to her that, on at least one occasion, his telephone service was disconnected due to his failure to pay his telephone bill. The appellant informed Ms. Rice that he had made a van and a car payment instead. Ms. Rice acknowledged that, depending upon individual case assessments, some participants in the community corrections program are relieved of the requirement of electronic monitoring due to their limited financial resources.

The appellant testified on his own behalf at the revocation hearing. He asserted that Ms. Rice's supervisor had granted him permission to violate his curfew in order to maintain two jobs. Although he admitted visiting the Favorite Market after his curfew, he asserted that he only stopped at the market en route to work or as he was returning home from work. Moreover, the appellant claimed that he generally only stayed at the market for "a half hour or so." The appellant conceded that, on one occasion, he may have lingered at the market for one and one half hours.

The appellant further testified that, upon the reinstatement of his community corrections sentence, he was unable to immediately obtain telephone service at his residence, because he was "broke," he owed several unpaid bills, and the trailer in which he was living "had to be wired for a telephone and all the lines put in." The appellant confirmed that he obtained telephone service in October 1998, but, in contrast to Ms. Rice's testimony, he asserted that his service was only disconnected on one occasion in December 1998 due to the loss of his primary employment and his consequent failure to pay his telephone bill.

Following the revocation hearing, on March 3, 1999, the trial court revoked the appellant's community corrections sentence and ordered the appellant's incarceration in the Department. In revoking the appellant's alternative sentence, the trial court neglected to make any oral or written findings of fact stating the evidence relied upon and the reasons underlying the court's decision.

**II.**

Initially, we note that revocation procedures for probationary sentences and community corrections sentences are similar. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). See also State v. Cousett, No. W1999-01256-CCA-R3-CD, 2000 WL 205055, at **1-2 (Tenn. Crim. App. at Jackson, February 10, 2000). Compare State v. Taylor, 992 S.W.2d 941, 945 (Tenn. 1999). Thus, a trial court may revoke a defendant's community corrections sentence whenever it finds that a defendant has violated the conditions of his sentence. Harkins, 811 S.W.2d at 82 (citing Tenn. Code Ann. § 40-35-311(d)). See also Tenn. Code Ann. § 40-36-106(e)(4) (1998 Supp.). In determining whether or not to order revocation, the trial judge need not find beyond a reasonable doubt that a violation has occurred. Rather, the existence of a violation need only be supported by a preponderance of the evidence. Id. Upon revocation, the court may order a defendant to serve his sentence in confinement. Id.

On appeal, this court will not reverse the judgment of the trial court absent an abuse of discretion, reflected in the record by an absence of substantial evidence to support the

trial judge's findings.  Id.  This court's review of the evidence does not encompass an evaluation of the credibility of the witnesses at the revocation hearing.  The trial judge determines the credibility of witnesses.  Cf. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App.1991).  See State v. Hudson, No. 01C01-9310-CR-00335, 1994 WL 142730, at *2 (Tenn. Crim. App. at Nashville, April 21, 1994).  That having been said, a trial judge's failure to make oral or written findings of fact denies a defendant due process of law and requires the reversal of any revocation and a remand of a defendant's case to the trial court for the entry of appropriate findings.  Cf. State v. Weaver, No. 03C01-9607-CR-00269, 1998 WL 19935, at *3 (Tenn. Crim. App. at Knoxville, January 22, 1998).

Again, in the instant case, the trial court failed to make the requisite findings of fact.  Accordingly, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.  Although the appellant correctly states and it was undisputed at the revocation hearing that he had received permission from Ms. Rice's supervisor to violate his curfew in order to maintain his employment, this authorization did not encompass prolonged visits to Favorite Market.  However, if the trial court intends to rely upon the appellant's failure to maintain telephone service at his residence, the trial court should make specific findings concerning the appellant's financial ability to maintain such service.  Cf. State v. Dye, 715 S.W.2d 36, 39-41 (Tenn. 1986)(citing Bearden v. Georgia, 461 U.S. 660, 665-668, 672-674, 103 S.Ct. 2064, 2069-2070, 2073-2074 (1983)).  If the appellant wilfully refused to pay for the telephone service or failed to make bona fide efforts to obtain the means to pay, then the trial court may revoke the community corrections sentence and order the appellant's incarceration.  Id.  If instead the appellant was unable to pay through no fault of his own, his inability may not form the basis for incarceration unless alternative measures other than incarceration are inadequate to meet the State's need for punishment and deterrence.  Id.

## III.

For the foregoing reasons, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.

_____
NORMA McGEE OGLE, JUDGE