STATE of Tennessee, Appellee,

v.

J.B. DYE, Appellant.

Supreme Court of Tennessee,
at Jackson.

Aug. 11, 1986.

Edward G. Thompson, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

We granted defendant's Rule 11 application for permission to appeal to determine whether in light of *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the Court of Criminal Appeals erred in affirming the trial court's revocation of defendant's probation for failure to make restitution.

On 16 February 1981, defendant was indicted on a charge of fraudulent breach of trust. He was alleged to have appropriated to his own use gasoline products placed in his hands for consignment by the E.L. Morgan Company of Jackson, Tennessee. On 26 June 1981, defendant pleaded guilty to the charge. Judgment was entered against him, and he was sentenced to not less than three years nor more than three years in the state penitentiary. The entire sentence was suspended and defendant was placed on three years probation upon the condition that he made restitution to his victim in the amount of $14,295.45 in installments of $4,000 the first year and $6,000 the second year, with the balance to be paid the third year.

It is undisputed that defendant failed to comply with the condition that he make restitution. On 7 March 1984, defendant's probation officer filed a violation report which contained the following notation: "Subject entered the Veteran's Administration Hospital ... in August 1981 and remained there until February 13, 1984 (unverified) allegedly suffering from heart trouble and a nervous breakdown. ... Mrs. Dye has advised this officer that they declared bankruptcy and have no income other than a pension check from V.A." On March 17, 1984, an order was issued commanding defendant's arrest and requiring him to show cause why his probation should not be revoked. Defendant was thereafter taken into custody and released on a $2,500 appearance bond.

Defendant appeared in court as required on 11 June 1984, with an attorney who had not been retained in the matter. Defendant requested a two-week continuance, whereupon the following exchange took place:

THE COURT: I'm going to pass this matter until June 25th which is two weeks from today in Trenton. If the entire matter is not paid in full and the Court costs are not paid in full, I'll have you remanded to the custody of the Sheriff to have you transported to the State

Department of Corrections, where you will be incarcerated in the state penitentiary for a three year period. Do you understand?

MR. DYE: Yes, sir.

....

THE COURT: All right. I'll see you in two weeks in Trenton.

Defendant was present and represented by counsel when the cause came to be heard on 25 June 1984. Defendant's lawyer made a lengthy opening statement wherein he reviewed defendant's health prior to the commission of the offense of fraudulent breach of trust and following his guilty plea and promise of restitution, and tendered records in support thereof. He said that defendant had a history of myocardial infarction, angina, breathing difficulties, gout and mental problems; that defendant had been in the Veteran's Administration Hospital in 1977, 1978, 1979, and twice in 1980. He told the court that defendant was in the hospital all except six months of the thirty-three month period between the promised restitution and the show cause order. He said that defendant's wife had medical problems, they had no property or assets and their only income was a Veteran's Administration pension in the sum of $1,200 a month that had been received only since November 1983.

Defendant's lawyer cited *Bearden v. Georgia, supra,* and invited the trial court to carefully consider a finding that defendant was without fault in failing to meet the terms of restitution promised or at least entitled to have the court consider other alternatives to prison under the principles enunciated in that case. He advised the court that he had recently been hired and asked that the court take the matter under advisement so that he could explore with defendant's children the capacity of the family to pay toward full restitution and come up with a specific plan.

The court responded as follows:

THE COURT: Just out of curiosity, what other alternative do I have? What choice do you leave me? If a man comes in here and says he's not going to pay what he's agreed to pay, what choice do you leave me?

MR. THOMPSON: I'm not telling the Court that he says he's not going to pay. He's going to make an attempt to pay.

THE COURT: He hasn't in three years.

....

MR. THOMPSON: I understand that, but I think the Court has alternatives.

THE COURT: I'm going to tell you right now before you waste your time any further, he's going to pay it and he's going to pay it quick, or he's going to the pen to serve his time.

The only testimony adduced at the revocation hearing was that of defendant's wife, Dorothy Dye. Mrs. Dye testified that her husband was sixty years old and totally disabled. She indicated that he had been hospitalized for heart and breathing difficulties and mental problems for all but eight or nine months since he pleaded guilty. Mrs. Dye stated that defendant took a number of medications which necessitated constant supervision. She testified that defendant had to be bathed and that he required the assistance of a breathing machine three times a day. Voluminous medical records were submitted to confirm defendant's array of ailments and to document the extended periods of his hospital confinement.

Mrs. Dye further testified that she had written to the assistant attorney general's office in September of 1983, offering to make reduced monthly payments. The letter, which was introduced into evidence, stated in part:

Unfortunately Mr. Dye was hospitalized with a massive heart attack approximately two years, coupled with a nervous breakdown. He has, by and large, remained hospitalized in the Veteran's Administration Hospital in Memphis since. As recently as two months ago he had two lesser heart attacks and his prognosis is not good.

In an effort to resolve this matter, I am offering to pay the sum of $50.00 monthly from Mr. Dye's Social Security benefits. If, by some miracle, Mr. Dye makes a recovery sufficient to enable him to return to work, then he has authorized me to state that he will then pay ½ of his earnings until this debt is retired.

Mrs. Dye testified that when she did not receive a reply, she telephoned defendant's probation officer who told her that "it was too late to send anything."

Mrs. Dye said that her husband's income consisted of veterans' benefits for 100% disability. She indicated that she and her husband would seek financial assistance from their five adult children if the court would allow them additional time.

The State declined to cross-examine Mrs. Dye, introduced no evidence, and proffered only the following argument in support of imprisonment:

GENERAL SCHOONOVER: If the Court please, I would just briefly say to the Court that he came into Court with an agreement. That was agreeable with everybody concerned, his attorney and all. The only thing I would say to the Court is this. We have got to have some kind of control over the people we put on probation in lieu of sending them to prison. If we don't we might as well just turn them loose.

During defense counsel's argument, defendant became sick and the court recessed. At the conclusion of the hearing, the court revoked defendant's probation and ordered defendant remanded to the custody of the sheriff as of 2 July 1984, and added that the sentence would be suspended when full restitution and costs were paid.

Proceedings were resumed on 2 July 1984, whereupon counsel advised the court that defendant had been unable to obtain a loan or family help. Defendant moved the court to waive or adjust the restitution previously ordered, and offered to pay $200 a month for a period of five years and ten months. The court overruled the motion, denied bond, and ordered that defendant be taken into custody and transported to the state penitentiary. The court remarked:

THE COURT: I have considered other alternatives. I have put up with this thing for three years. Mr. Dye has made no effort whatsoever to pay one red cent on the restitution as he has agreed to do. I couldn't help but notice last Monday when he had his spell in Court a pack of cigarettes fell out of his pocket. If he's in the shape you say he's in, he doesn't need to be smoking. He could at least have taken that dollar and paid on the restitution. I don't have any patience with that whatsoever. I think I have been as lenient with him as I know how to be and I have given Mr. Dye every opportunity that I know how to give him to make this restitution that he has agreed to do so accordingly, I'm going to revoke your probation....

The Court of Criminal Appeals affirmed, finding that because a plea bargain agreement was involved and defendant had breached a self- rather than court-imposed condition of his probation, to hold otherwise would "permit a fraud on the judicial system," *quoting State v. Mayberry,* 638 S.W.2d 422 (Tenn.Crim.App.1982).

The Supreme Court of the United States addressed a similar situation in *Bearden.* In that case petitioner pleaded guilty to burglary and theft by receiving stolen property. The trial court placed petitioner on probation on the condition that he pay a $500 fine and $250 in restitution. A loan from petitioner's parents enabled him to make one $200 payment, but petitioner subsequently lost his job and failed to pay the balance. The record showed that petitioner was unable to find other work, and had no income or assets. The trial court revoked probation and sentenced petitioner to prison for the remainder of the probationary period. The United States Supreme Court reversed and remanded, and applying the principles enunciated in *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), held that if a state initially "deter-

mines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lack[s] the resources to pay it." *Bearden,* 461 U.S. at 667–68, 103 S.Ct. at 2070.

The *Bearden* court carefully distinguished this limitation on the imprisonment of indigents from the situation where a defendant was "somehow responsible" or "at fault in failing to pay" an imposed fine or restitution. *Id.* at 665, 668, 103 S.Ct. at 2069, 2070. The Court explained that "[t]his distinction, based on the reasons for nonpayment, is of critical importance ...," and noted that a state may be "perfectly justified in using imprisonment as a sanction to enforce collection" against a probationer who neglects or willfully refuses to pay when he has the means to do so. *Id.* at 668, 103 S.Ct. at 2070. The Court continued:

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment. *Id.* at 672–73, 103 S.Ct. at 2073.

In *State v. Walding,* 477 S.W.2d 251 (Tenn.Crim.App.), *cert denied* (Tenn.1972), defendant pleaded guilty to two misdemeanor charges after bargaining for consecutive thirty day jail sentences and cumulative $150 fines. After serving the jail sentences, defendant was indigent and unable to pay the fines. When the trial judge permitted defendant's release and arranged for him to pay the fines in weekly installments of $20 each, the State appealed. The Court of Criminal Appeals, applying authorities subsequently relied upon in *Bearden,* affirmed the action of the trial court and remarked, "We do not believe that the fact that Walding bargained for his punishment permits the State to keep him in jail when he, despite his earlier hopes, was unable to pay his fines in toto instanter because of his indigency." *Id.* at 252–53. Although *Walding* is distinguishable on its precise facts from the instant case, its rationale is equally fitting here.

■ We are of the opinion that the requirements of *Bearden v. Georgia, supra,* are clearly controlling in the case at bar, notwithstanding the fact that defendant may have bargained for the imposition of restitution in lieu of incarceration. The *Bearden* Court made no suggestion that its reasoning was dependent upon the procedure by which restitution came to be imposed, or that its prohibition against the automatic incarceration of an indigent probationer was intended to be applied only in the context of a sentence imposed by the court of its own initiative.

■ In his opening statement, defendant's lawyer stated that defendant's prior lawyer had filed a petition in bankruptcy on defendant's behalf three days prior to the discovery of the fraudulent breach of trust, in December 1980. The record is silent with respect to what information the district attorney or the court had before it in June 1981 when defendant's offer of restitution within three years was made bearing upon defendant's health, assets and financial resources. However, it is apparent that there existed no reason whatever why defendant's health problems, his pending

bankruptcy and his future ability to pay could not have been easily ascertained. The district attorney and the court have a responsibility to assess the reasonableness of a defendant's offer to make restitution if that is the basis for the suspension of a sentence. Regardless of *Bearden's* requirements, if that responsibility is not performed at the time the offer of restitution is made and accepted, it is inappropriate for the court to say to a defendant, "You said you could do it and you did not. You must go to jail, regardless of your fault or lack of fault in failing to meet the terms of the restitution agreement."

■ The trial court did not articulate a finding that defendant had neglected or willfully refused to pay, nor did it expressly find that alternatives to imprisonment were inadequate to meet the State's interests in punishing the offender, deterring others from similar conduct, and ensuring the payment of restitution to victims of crime. Pursuant to *Bearden*, "[u]nless such determinations are made ..., fundamental fairness requires that the [defendant] remain on probation." *Id.*, 461 U.S. at 674, 103 S.Ct. at 2074.

■ The evidence offered by defendant stands undisputed in this record and makes a prima facie case that defendant's state of health and financial condition were such that it cannot be said that he, "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay."

In these circumstances the defendant has shown good cause why he has not complied with the condition of his probation of paying restitution in three years and the order to show cause issued in March 1984 must be dismissed.

This cause is remanded to the trial court for a hearing to determine whether or not there has been any change of defendant's circumstances since 2 July 1984 that would require an adjustment up or down of the offer defendant made at that time to pay $200 per month. If not, an amended order shall be entered requiring that he pay $200

per month until full restitution is made or until further orders of the court under applicable law. If defendant's circumstances have changed in the respects applicable to his ability to make restitution, the court shall make an appropriate adjustment in the monthly amount, based upon reasonable expectations from the resources available to defendant.

The judgment of the Court of Criminal Appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs are adjudged against the State.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.