# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 2000 Session

## STATE OF TENNESSEE v. SHIRLEY COOPER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-9905     D. Kelly Thomas, Jr., Judge**

---

### No. E1999-01810-CCA-R3-CD
### September 22, 2000

---

The defendant was charged with violation of probation for harassment.  The trial court found that the defendant had materially and repeatedly violated the terms of her probation, and that, given her history, she was not capable of successfully completing a term of supervised probation.  Consequently, the trial court revoked the defendant's probation, ordering that she serve her original sentence of eleven months and twenty-nine days in jail, with credit given for the forty-one days of jail time she had already served.   The defendant filed a timely appeal, presenting the sole issue of whether the trial court erred in revoking her probation.  Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Raymond Mack Garner, District Public Defender; and Shawn G. Graham, Assistant District Public Defender, for the appellant, Shirley Cooper.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Edward P. Bailey, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On September 23, 1998, the defendant pled guilty to one count of harassment in the Blount County Circuit Court.  The trial court sentenced her to a jail term of eleven months and twenty-nine days, but suspended the sentence, granting her supervised probation and ordering that she have no further contact with the victim of her harassment.  Under the terms of her probation, the defendant was required, *inter alia*, to pay court costs and probation fees, to obey the laws and to immediately

report any arrests to her probation officer, to obtain approval prior to any move and to notify her probation officer of any changes of address, to make a regular report to her probation officer as scheduled, and to refrain from use of any intoxicating beverage or controlled substance.

On March 31, 1999, a probation violation warrant was issued against the defendant. The warrant alleged that the defendant had violated her probation by being arrested and convicted in Hamilton County on the charge of driving on a revoked license, by failing to report to her probation officer as scheduled, by leaving a residential halfway house without notifying her probation officer or reporting her whereabouts, by failing to pay probation fees and court costs, and by contacting the victim by telephone.

A probation revocation hearing was held before the Blount County Circuit Court on July 19, 1999. Beverly Kerr, the defendant's Blount County probation officer, testified that the defendant made her probation appointments for the months of October, November, and December 1998, but that the defendant failed to report for her scheduled appointment in January 1999. Kerr said that on January 26, 1999, she had received a phone call from a friend of the defendant, who told her that the defendant had been arrested in Knox County for violation of probation on a Knox County conviction.

After contacting the defendant's Knox County probation officer, Kerr learned that at the time the defendant was sentenced to supervised probation for the harassment conviction in Blount County, she had been on probation in Knox County for theft, forgery, and criminal impersonation convictions. Kerr said that the defendant did not tell her of the Knox County convictions, and that the defendant failed to inform her Knox County probation officer of her harassment conviction in Blount County. Kerr also learned that on November 24, 1998, the defendant had been arrested in Hamilton County for driving on a revoked license, and that she had subsequently been convicted of that offense. Kerr said the defendant failed to inform her of her Hamilton County arrest and conviction.

Kerr stated that in February 1999 she received a faxed probation report from the defendant from Agape Halfway House in Knox County, which the defendant had entered, by order of the Knox County Court, upon her release from the Knox County Jail. Kerr testified that the director of Agape House contacted her on March 18, 1999, to tell her that the defendant had that day tested positive for drug use, for benzodiazepines. The following day Kerr was again contacted by Agape's director, who told her that the defendant had left the house during the night without permission, and that they did not know her whereabouts. Kerr said that the last contact she had had with the defendant was the February 1999 probation form that the defendant faxed from Agape House. Kerr further testified that the defendant owed back probation fees to Blount County.

When asked her opinion regarding the defendant's continued probation, Kerr indicated that she would recommend revocation:

**Q.** Based on this history of supervision or lack of supervision, do you have an opinion as to whether you or the Department of Probations and Paroles can effectively supervise this individual on community release?

**A.** From what I have experienced so far with Ms. Cooper, I don't see any indication that she wishes to cooperate or be honest with our department of probation or any other department.

The defendant testified in her own defense. She said that she had been a resident at Cornerstone, a drug treatment facility in Blount County, at the time she was arrested for violation of her Blount County probation. She explained that she had been in Hamilton County, where she was arrested on November 24, 1998, for driving on a revoked license, because she had been attending a methadone clinic in Chattanooga. The defendant stated that she failed to make the initial court date on that charge because she lacked transportation to court. She had later pled guilty to the charge, received a six-month suspended sentence, and been placed on unsupervised probation.

The defendant said that her positive test for benzodiazepines on March 18, 1999, was the result of her ingesting benzodiazepines that she had been given at a detoxification center, Dry Dock, which she had attended, prior to her admission to Agape House, in an effort to overcome her addiction to methadone. According to the defendant, the officials at Agape House had asked her to leave the house after her positive drug test because they did not believe that any benzodiazepines she had received at Dry Dock would have still been in her system on March 18.

The defendant acknowledged that she had called on the telephone from a friend's house the victim in the harassment case. She insisted, however, that the phone call had been unintentional. She stated that she had "dialed a number incorrectly," when attempting to call a friend, that she "must have hit another number that was similar somewhere," and that it had happened, by chance, to be the victim's phone number that she dialed.

The defendant further acknowledged that she had not only failed to inform her probation officers of her attendance at the Chattanooga methadone clinic, but that she had also failed to inform Kerr of her arrest and conviction in Hamilton County for driving on a revoked license, of her "accidental" phone call to the victim, of the fact that she had been on probation in Knox County at the time of her conviction in Blount County for harassment, of her attendance at Dry Dock, or of her admittance to Cornerstone Recovery House.

The defendant testified that her time at Cornerstone House had been "very beneficial" to her, and that she had not used drugs since shortly before she entered the program at Cornerstone. She said that she had "worked on a lot of issues," including "honesty issues," while she was in treatment. She indicated that she believed she would be able to turn her life around and become a productive member of society if allowed to return to Cornerstone.

A representative from Cornerstone testified that the program was willing to readmit the defendant, and that if it did so, she would live in Cornerstone's halfway house, Stepping Stone, and attend the Professional Assistance Program, an outpatient drug treatment program. On cross-examination, the representative admitted that the defendant would be free to leave Stepping Stone at any time she wished, and that unless the defendant authorized the facility to do so, it would not have the authority to inform the defendant's probation officers of the results of any of the defendant's drug tests, or of whether she had left the facility.

At the conclusion of the hearing, the trial court found that overwhelming proof had been presented that the defendant had violated the terms of her probation. The trial court further found that the defendant would not be able successfully to complete a term of supervised release, given her past failure to inform her probation officers of her whereabouts and activities. The trial court revoked the defendant's probation, and ordered that she serve her sentence as originally imposed, with credit given for the forty-one days she had already spent in custody.

## ANALYSIS

The defendant argues that the trial court abused its discretion in revoking her probation. She admits that she violated the terms of her probation, but contends that the court erred by finding that she would be unable to successfully complete a term of supervised probation. The defendant asserts that she was on the road to recovery from her serious drug addictions at the time she was arrested for violation of her Blount County probation, and that forcing her to serve her sentence in jail, where she will not have ready access to treatment, will undermine her recovery and rehabilitation. The defendant suggests that an appropriate response to her violation of probation would be the imposition of a period of split confinement followed by the extension of her probationary period for a period up to one year, with the requirement that she continue to reside in a halfway house and receive out-patient drug treatment.

The State argues that the trial court did not abuse its discretion in revoking the defendant's probation and in ordering that she be required to serve her original sentence in jail. The State contends that the trial court's decision was supported by substantial evidence of the defendant's repeated violations of the terms of her probation, and of the deception she practiced in her dealings with her probation officer.

Tennessee Code Sections 40-35-310 and 40-35-311 grant the trial court the right to revoke a suspended sentence and to reinstate the original sentence if the court finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310 and 40-35-311 (1997). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v.

Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). We review this issue, therefore, for an abuse of discretion.

Our review of the record reveals no abuse of discretion by the trial court in this matter. The preponderance of the evidence clearly supports the trial court's finding that the defendant repeatedly violated the terms of her probation. Probation Officer Kerr testified, and the defendant herself admitted, that the defendant violated the terms of her probation by driving on a revoked license, repeatedly changing her location without prior approval and without notifying her probation officer, contacting her victim, neglecting her monthly probation reports, and failing to pay her monthly probation fees. Moreover, the record shows that throughout the period of her probation the defendant deceived Kerr by failing to inform Kerr of her status and activities, including the crucial facts that she was on probation in Knox County at the time she was convicted in Blount County, that she had been arrested and convicted for driving on a revoked license in Hamilton County, and that she had contacted her victim.

Although the defendant admits these probation violations, she nonetheless argues that the trial court abused its discretion by revoking her probation and reinstating her original jail sentence. The defendant cites State v. Dye, 715 S.W.2d 36, 41 (Tenn. 1986), for the proposition that when the trial court fails to make a finding that an alternative to imprisonment is "inadequate to meet the State's interest in punishing the offender, deterring others from similar conduct, and insuring the payment of restitution to victims of crime," allowing a defendant who has violated the terms of his probation to remain on probation is appropriate.

The facts in Dye, however, are not analogous to those of the case at bar. The defendant in Dye pled guilty to a charge of fraudulent breach of trust, was given a three-year suspended sentence, placed on probation, and ordered to make restitution of $14,295. Id. at 37. He failed to pay on schedule. Id. At the conclusion of the probation revocation hearing, the trial court revoked the defendant's probation, refusing his offer to pay $200 per month for five years and ten months. Id. at 39. This court affirmed. Id. Our supreme court reversed, finding that the defendant, who had spent over two years in a Veterans' Administration Hospital since his sentencing, and who had declared bankruptcy, had shown good cause for his failure to make restitution. Id. at 41. The court remanded the case to the trial court for a hearing to determine an appropriate schedule and monthly amount for the defendant to pay until full restitution had been made. Id.

The defendant in this case, unlike the defendant in Dye, has repeatedly and materially violated numerous terms of her probation, all of which were within her power to meet, had she desired to do so. Furthermore, we note that, contrary to the defendant's implied assertion, the trial court did, in fact, make a finding that the defendant's proposed alternative to imprisonment would be inadequate in this case. The trial court stated:

> And the next question is the likelihood of rehabilitation and
> whether or not she will successfully complete a term of supervised

release, which is what she's asking for. And for whatever reason, I just don't think there's any chance that's going to happen.

There is no way to be supervised if you refuse to let the people that are supposed to be supervising you know where you are and what you're doing. And if you had done that once, that would be one thing. But you've done it countless times in the last two years.

Substantial evidence in the record supports the trial court's findings that the defendant had violated her probation and that she was unwilling to comply with the terms of supervised release. Accordingly, we find no abuse of discretion by the trial court in revoking the defendant's probation and ordering her to serve her full sentence in jail.

Based upon the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE