IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs January 25, 2005

**STATE OF TENNESSEE v. JULIA MOSLEY**

**Direct Appeal from the Criminal Court for Sullivan County**
**Nos. S45, 891; S46, 586     Phyllis H. Miller, Judge**

---

**No. E2004-01787-CCA-R3-CD - Filed April 8, 2005**

---

The appellant, Julia Mosely, pled guilty in the Sullivan County Criminal Court to facilitation of attempted rape of a child and felony failure to appear. Pursuant to the plea agreement, she was sentenced to six years for the facilitation conviction and one year for the felony failure to appear. The trial court ordered that the two sentences be served consecutively, with both sentences suspended and to be served on probation. Thereafter, the trial court revoked the appellant's probation and ordered her to serve the balance of her sentences in confinement. On appeal, the appellant challenges the revocation of her probation. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

William A. Kennedy, Blountville, Tennessee, for the appellant, Julia Mosley.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Barry Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

On April 10, 2003, the appellant pled guilty to facilitation of attempted rape of a child and felony failure to appear. Pursuant to the plea agreement, she was sentenced to six years for the facilitation conviction and one year for the failure to appear conviction, with the two sentences to be served consecutively. Both sentences were suspended and the appellant was placed on probation. As a condition of her probation, the appellant registered as a sex offender and was prohibited from having unsupervised contact with children. On June 7, 2004, a probation revocation warrant was issued against the appellant, alleging that the appellant had unsupervised contact with her three-year-

old granddaughter on June 6, 2004. Counsel was appointed, and a hearing was held on July 15, 2004.

At the hearing, Robert Henshaw, a manager in the the Department of Probation and Parole, testified that he was driving home from church on Sunday, June 6, 2004, when he saw the appellant sitting on her apartment's front porch with a child. No other adults were present. Mr. Henshaw took his family home and returned to the apartment. The appellant and the child were still the only two people present, and the child was playing in the parking lot of the apartment complex. He stated that when he asked the appellant if she knew who the child was, she denied having any knowledge of the child. Mr. Henshaw testified that upon further questioning, the appellant directed him to one of the apartments because "she thought [the child's mother] was in one of them." At that apartment, Mr. Henshaw found one of the appellant's daughters, who informed him that the child was her niece and the appellant's granddaughter. He further asserted that his investigation revealed that the child's mother was in jail and that the child had been passed from one family member to another for care-taking. Mr. Henshaw stated that during his investigation, he was told that the appellant's son was the most recent caretaker of the child and that he had left the child with the appellant some time on Saturday or Sunday morning and could not be contacted. He further testified that the appellant admitted to him that she had initially lied because she was afraid of going to jail.

The appellant's probation officer, Wendy Minton, testified that she had placed the appellant and the appellant's daughters on notice that the appellant was to have no unsupervised contact with children. She also stated that she knew that the appellant was on oxygen twenty-four hours a day but that the appellant had both a stationary tank and a portable one.

The appellant testified that when she awoke on Sunday morning, the child was in her apartment. She stated that she did not know who had left the child, because all of her children had keys to her apartment. She then stated that the child was left outside her house, and she was awakened by the child banging on her glass door. The appellant stated that she could not call her daughter in the apartment below to come get the child because her telephone had been disconnected. The appellant shouted, attempting to get her daughter's attention, but she was unsuccessful. She asserted that she was not physically capable of walking to her daughter's apartment because her oxygen tank's tube was not long enough. Therefore, she sat outside with the child to wait for someone to come to her apartment. On cross-examination, the appellant admitted that she had a portable oxygen unit that she used for grocery shopping and doctor's appointments. The appellant again stated that she originally lied to Mr. Henshaw and to the court because she was afraid of going to jail.

The trial court specifically found that the appellant was one of the least credible people it had ever observed, noting her conflicting stories about how the child came to be with her. The trial court noted,

> [I]f your daughter had covered for you . . . you wouldn't have had to admit you were lying that day. You changed your story here, I find on how, where the child was, how you first knew it was there. . . . The underlying case was rape of one of your grandchildren by one of

> your sons and you covered for him . . . you knew exactly what he had done.
>
> . . . You knew what you were supposed to do and not supposed to do. You just didn't think that on a Sunday that anybody is going to catch you, so you got caught. . . . I find that they've proved that you violated probation beyond a reasonable doubt even though they don't have to prove it that much. Your probation is revoked. You're a dangerous offender, I find. You're hard to supervise, you're not creditable, you lie.

The trial court then revoked the appellant's probation and ordered that she serve her sentences in confinement.

On appeal, the appellant contends that she did not willfully violate her probation, that she was forced into the situation, and that a defense of necessity should have been considered before revoking her probation.

## II. Analysis

On appeal, the appellant argues that the trial court abused its discretion in revoking her probation. Initially, we note that, upon finding by a preponderance of the evidence that the appellant has violated the terms of her probation, a trial court is authorized to order an appellant to serve the balance of her original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and 40-35-311(e) (2003); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Such probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. See State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).

The appellant argues that while she may have technically violated the conditions of her probation, she was forced into the situation and did not voluntarily choose to have contact with her granddaughter. Thus, she should be shielded by a defense of necessity. However, as the trial court noted, the testimony of the appellant and other witnesses at the evidentiary hearing shows that the appellant had the ability to use her portable oxygen tank to reach her daughter's apartment door and that she chose not to use it on the morning in question. Even if the child had been left at the apartment unbeknownst to the appellant, the appellant effectively chose to continue that contact. The record reflects that the appellant's daughter lived in the apartment just below the appellant's apartment. However, the appellant did not notify her daughter of the child's presence. Whether the defense of necessity applies to the appellant's situation is irrelevant, as she would have violated her probation even if the defense were applicable.

The appellant also argues that, according to State v. Dye, 715 S.W.2d 36, 41 (Tenn. 1986), the State must prove that the appellant's acts were willful in order for them to constitute a violation

of probation.  However, <u>Dye</u> speaks to the situation in which a defendant has violated his probation by failure to pay restitution or fines.  <u>Id.</u>  The court in <u>Dye</u> stated that the trial court must determine the reasons behind the failure to pay.  <u>Id.</u>  If the failure is not willful and the defendant has made genuine efforts to pay, the court may choose not to revoke the defendant's probation.  <u>Id.</u>  The instant case does not involve the failure to pay fines but rather a failure to adhere to the probation conditions imposed upon her by her status as a sex offender.  <u>See</u> <u>State v. William A. Marshall</u>, No. M2001-02954-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 868, at *20 (Nashville, Oct. 14, 2002).

As noted above, the appellant was physically able to contact her daughter, but she chose not to do so.  Additionally, the trial court specifically found that the appellant's testimony was not credible and rejected her assertion that she could not summon her daughter for assistance.  As the appellant's own testimony shows that she lied both to the probation officer and to the court, there is sufficient evidence to show that the trial court did not abuse its discretion in finding that she violated her probation.  Accordingly, the trial court was within its power to revoke the appellant's probation and order her to serve the balance of her sentence in confinement.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE