FILED
10/18/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2022

**STATE OF TENNESSEE v. JUSTIN MICHAEL BANNING**

**Appeal from the Circuit Court for Blount County**
**No. C-27913  Tammy M. Harrington, Judge**

_____

**No. E2022-00188-CCA-R3-CD**

_____

The Defendant, Justin M. Banning, was originally sentenced to a term of four years and placed on probation.  Thereafter, the Defendant committed a new criminal offense, engaged in unlawful substance use, and violated a no-contact order with the victim.  As a consequence, the trial court revoked the suspended sentence and ordered that the Defendant serve the original four-year sentence in custody.  On appeal, the Defendant contends the trial court abused its discretion by revoking his suspended sentence in its entirety.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

 J. Liddell Kirk, Madisonville, Tennessee, for the appellant, Justin Michael Banning.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Mike Flynn, District Attorney General; and Tiffany Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On August 16, 2021, the Defendant pled guilty to the offenses of aggravated assault and kidnapping.  The trial court imposed an effective sentence of four years, but it suspended the sentence and placed the Defendant on probation to be supervised by the

- 1 -

Department of Correction. As one of the conditions of his suspended sentence, the Defendant was to "have no contact with the person/property of Christa Burchell," who was the victim of his crimes.

Shortly after the Defendant's release, the Department of Correction filed a probation violation report, alleging that the Defendant tested positive for the use of controlled substances and that he had committed the offense of driving under the influence of an intoxicant. The Department later filed an addendum alleging that the Defendant also violated the trial court's no-contact order.[1]

The trial court held a revocation hearing on January 12, 2022. At the hearing, the Defendant stipulated to three probation violations: testing positive for the unlawful use of amphetamine, methamphetamine, and morphine on August 24, 2021; obtaining a conviction for DUI dated November 11, 2021, in Knox County; and violating the trial court's no-contact order with Ms. Burchell. The parties also collectively admitted two exhibits consisting of the affidavit of the toxicologist who conducted testing of the Defendant's sample taken on August 24, 2021, and a collective exhibit consisting of the judgment of conviction and affidavit of complaint related to the Defendant's DUI arrest.

For its part, the State did not offer further proof at the hearing, but the Defendant chose to testify on his own behalf. The Defendant testified that he has had a "long-time drug abuse problem," and that he uses methamphetamine and heroin. Although he denied that he had participated in substance-use treatment previously, he acknowledged that his probation officer suggested that he participate in an alcohol and drug assessment. However, he stated that he did not have such an evaluation because he "caught the DUI for driving under the influence of drugs."

The Defendant stated that he would "really love to get rehabilitated and off of the drugs." When his lawyer asked if he believed he needed inpatient treatment, the Defendant responded he would be "open" to it, but that he thought he would succeed in outpatient treatment with "more structure in [his] life." Nevertheless, the Defendant concluded that he would like to be released and assessed to determine whether he needed inpatient treatment.

On cross-examination, the Defendant agreed that he was ordered to have no contact with Ms. Burchell, but that he violated the order. He also agreed that he was ordered to

---

[1] Neither the probation revocation violation report nor the addendum to the violation report have been included in the appellate record for our review. However, we have gleaned the contents of the reports from stipulations the Defendant made at the probation revocation hearing.

have an alcohol and drug assessment but that he did not complete the assessment following his arrest for DUI in Knox County. The Defendant admitted that, within days of his original release from custody, he used methamphetamine and morphine and that, within about a month of his release, he had been arrested for DUI. He also confirmed that he pled guilty to the DUI offense in Knox County and was then transferred back to Blount County.

The Defendant testified that after his transfer back to Blount County, he contacted Ms. Burchell "at least daily" and that he told her to set up a different account under a different name because of the order of protection. He admitted telling Ms. Burchell that they had to "be sneaky" about their contact with each other. In addition, the Defendant testified that he asked his mother to contact Ms. Burchell and that his mother set up seven different accounts and telephone numbers to facilitate the prohibited contact.

In response to the State's question as to why the trial court should believe that he would follow the court's orders if reinstated to probation, the Defendant replied, "I believe I deserve a second chance. I can prove that I can abide by those rules." The Defendant agreed, however, that he received a "second chance" when he was released on probation after being convicted of aggravated domestic assault and kidnapping.

At the conclusion of the hearing, the trial court ordered that the Defendant serve the balance of his sentence in custody. The court initially reviewed the conditions of probation, including the no-contact order and the requirement that the Defendant take an alcohol and drug assessment and follow its recommendations. The court noted that the Defendant admitted to new substance use occurring "a couple of days after his incarceration" and that he was charged with a DUI offense. The court carefully reviewed the circumstances of the DUI offense, and it observed that the Defendant had continued contact with Ms. Burchell, seeming to have more concern "about what his mom thought about the contact than what the [c]ourt thought about violating the court order." As the trial court concluded, "[T]here is nothing else that this court can do if you choose to continue to violate orders even while incarcerated."

In a timely-filed appeal, the Defendant argues that the trial court abused its discretion in fully revoking his suspended sentence. We affirm the trial court's judgment.

## STANDARD OF APPELLATE REVIEW

Our Supreme Court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, No. E2020-00231-SC-R11-CD, 2022 WL 4137238, at *4 (Tenn. Sept. 13, 2022). The principal issue in this

case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this Court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.*

## ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant upon probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require such a defendant to comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of probation sentence, however, 'is rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 85 (Tenn. 1996)); Tenn. Code Ann. § 40-28-302(1)).

So long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999); *State v. Moses*, No. W2016-01762-CCA-R3-CD, 2018 WL 2292998, at *4 (Tenn. Crim. App. May 18, 2018) (holding that a defendant's probation may not be revoked for conduct that does not violate a condition of probation). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (2021).

As such, the nature of a probation revocation proceeding naturally involves a two-step process with "two distinct discretionary decisions." *See Dagnan*, 641 S.W.3d at 757. As our Supreme Court confirmed in *Dagnan*, the "first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.*

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005); Tenn. Code Ann. § 40-35-311(d)(1). Where a defendant admits that he or she violated a condition of probation, the

trial court may properly find that a violation exists. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *see also, e.g.*, *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022). Because the Defendant stipulated to the violations at the hearing and does not further contest those violations on appeal, we affirm the trial court's finding that the Defendant violated his probation conditions.

As to the second step, the consequence determination essentially examines whether the beneficial goals of probation are being realized and whether the defendant remains an appropriate candidate for probation. As the Supreme Court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan,* 641 S.W.3d at 759 n.5. Factors important to this last consideration may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court to ensure his or her effective rehabilitation. *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022); Tenn. Code Ann. § 40-35-102(3)(C). Trial courts may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community").

In this case, the trial court found that the appropriate consequence of the Defendant's violations was the full revocation of his sentence. The Defendant argues that the trial court abused its discretion by not ordering, instead, a period of split-confinement and substance-use treatment. In our view, the trial court appropriately considered the factors suggested by *Dagnan*. With respect to the nature and seriousness of the violation, the trial court reviewed the admitted affidavit of complaint, finding the facts surrounding the Defendant's arrest "significant." The court explained that "this whole thing started with a DUI over a possible domestic assault and past curfew in a county without permission and [Ms. Burchell] walking down the side of the road, and you're driving along beside her."

With respect to the Defendant's future amenability to rehabilitation, the trial court considered several factors. First, it considered how quickly the new violations occurred after the Defendant's original plea, observing that the Defendant's first violation occurred only "a couple of days" after he was released from custody. We have emphasized that this factor is appropriate for consideration in the consequence determination because, all things being equal, new violations that have occurred quickly after sentencing or a previous probation violation *may* show that the defendant is not voluntarily cooperating with

rehabilitative measures. *See, e.g.*, *State v. Boseman-Humes*, No. E2020-00938-CCA-R3-CD, 2021 WL 1847213, at *4 (Tenn. Crim. App. May 10, 2021) (affirming full revocation of an effective ten-year sentence and noting, in part, that the defendant had twice violated the terms of probation with each violation occurring "shortly after his release from confinement").

In addition, the trial court also considered the likelihood that the Defendant would comply with the court's orders. For example, in considering the Defendant's previous compliance with the court's no-contact order, the trial court found that the Defendant continued to violate this order daily, even while the Defendant was being held in custody pending the hearing. The Court also found that the Defendant even elicited the help of a third party, his mother, to violate the no-contact order.

The trial court's consideration of these factors was certainly appropriate. The presence of active revocation proceedings should serve as notice to a probationer that violation of the terms and conditions of probation could result in a revocation of the sentence. As such, a probationer who continues to violate the conditions of probation while awaiting revocation proceedings for previously alleged violations arguably demonstrates that he or she does not take the court's orders seriously. *See, e.g.*, *State v. Richardson*, No. M2006-01060-CCA-R3-CD, 2007 WL 776876, at *4 (Tenn. Crim. App. Mar. 15, 2007) (affirming full revocation of a seven-year sentence, stating, in part, that "on the day of his hearing to revoke his probation, the Defendant tested positive for marijuana and admitted smoking the same with other inmates in the jail.").

Furthermore, the Defendant's use of his mother as a screen to obscure his violations of the no-contact order, as well as his admonition to Ms. Burchell to "be sneaky," reveals a purposeful and willful intent to violate the court's orders. This is an appropriate consideration for a trial court as part of the consequence determination.[2] After all, if a probationer's violations are the result of intentional misconduct, taken in defiance of the conditions of probation, then this factor may show that the probationer is unlikely to comply voluntarily with future rehabilitative orders. *See Owens*, 2022 WL 2387763, at *5 (noting consideration of the willfulness of the violation as part of the consequence determination); *State v. Gibbs*, No. M2021-00933-CCA-R3-CD, 2022 WL 1146294, at *7 (Tenn. Crim. App. Apr. 19, 2022) (affirming full revocation of a ten-year community

---

[2]    Of course, trial courts are generally not required to consider the willfulness of a defendant's conduct in the *violation determination*, unless the violation involves a failure to pay a monetary obligation, such as restitution. *See State v. Dye*, 715 S.W.2d 36, 41 (Tenn. 1986); *State v. Goodwin*, No. E2008-00730-CCA-R3-CD, 2009 WL 47348, at *3 (Tenn. Crim. App. Jan. 8, 2009) ("However, we emphasize that a finding of willfulness is necessary only for violations that involve non-payment. If a ground other than non-payment exists upon which to base the revocation, a trial court need not find any violation to be willful.").

corrections sentence for failure to report and noting the trial court's finding that the Defendant "evinced a deliberate intent to not to comply" with the conditions of probation).

In this appeal, the Defendant argues that "perhaps it was an abuse of discretion for the trial court to order confinement for the balance of the sentence, rather than a period of split confinement with furlough for residential substance abuse treatment." We respectfully disagree. A trial court's consequence determination analysis is not merely focused on the probationer's rehabilitative needs alone. It must necessarily also consider whether those needs, including substance-use treatment, can be effectively addressed *in the community* rather than in custody. *See State v. Burkett*, No. M2019-02143-CCA-R3-CD, 2021 WL 2417596, at *5 (Tenn. Crim. App. June 14, 2021) ("We cannot say that the trial court abused its discretion by concluding that the Defendant's drug issues would best be treated in a correctional facility rather than in the community."); *State v. Clark*, No. E2017-00616-CCA-R3-CD, 2017 WL 6547102, at *4 (Tenn. Crim. App. Dec. 21, 2017) (affirming full revocation when "the Defendant was unlikely to be rehabilitated of his drug addiction outside of confinement"); *State v. Taylor*, No. E2016-01720-CCA-R3-CD, 2017 WL 3085436, at *4 (Tenn. Crim. App. July 20, 2017) ("The trial court did not err by concluding that the Defendant's drug issues would best be treated in a correctional facility rather than in the community.").

Thus, contrary to the Defendant's view, a trial court is not required to order substance-use treatment before fully revoking a suspended sentence where the court also finds that *community-based efforts* are no longer appropriate or are unlikely to be successful. This is particularly the case where there is little evidence that the probationer will comply with the court's treatment orders, *see, e.g.*, *State v. Taylor*, No. W2019-01246-CCA-R3-CD, 2020 WL 5088736 (Tenn. Crim. App. Aug. 27, 2020), or where the probationer fails to offer a plan for effective rehabilitation after previous efforts have been unsuccessful, *State v. Cook*, No. E2019-00257-CCA-R3-CD, 2020 WL 610942, at *3 (Tenn. Crim. App. Feb. 7, 2020).

In this case, the trial court understood these principles, and it properly considered the Defendant's request for additional treatment opportunities. In so doing, though, the trial court concluded that other factors outweighed the Defendant's request for additional community-based treatment, including that the Defendant could not be expected to comply with the court's rehabilitative orders. As the trial court observed, "[T]here is nothing else that this court can do if you choose to continue to violate orders even while incarcerated."

We agree with the State that the trial court properly exercised its discretion in deciding the consequence of the Defendant's violations. The trial court considered the seriousness of the violations and the willfulness of the Defendant's conduct. It considered

whether the Defendant would voluntarily comply with the court's rehabilitative orders and, as such, whether effective rehabilitation was reasonably feasible. The court also considered the Defendant's request for substance-use treatment, and it properly considered whether additional opportunities involving community-based treatment would be appropriate. Because these considerations were fully consistent with the Supreme Court's decision in *Dagnan*, we affirm the trial court's judgment.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in finding that the Defendant violated the terms and conditions of his suspended sentence. We also hold that the trial court acted within its discretion in revoking the Defendant's suspended sentence and ordering that he serve the sentence in the Department of Correction. We affirm the trial court's judgment.

_____
TOM GREENHOLTZ, JUDGE