FILED

08/21/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Remanded July 18, 2025

**STATE OF TENNESSEE v. SHENESSA L. SOKOLOSKY**

**Appeal from the Criminal Court for Smith County**
**No. 2017-CR-11      Brody Kane, Judge**

_____

**No. M2022-00873-CCA-R3-CD**

_____

TOM GREENHOLTZ, J., dissenting.

I respectfully dissent.   This case comes to us on a probation revocation where, even taking the State's evidence at face value, the proof does not establish a violation.   The trial court found absc   sion and failure to pay fines and costs, but the record supports neither finding.   And because the probation warrant was already admitted and considered, a remand to supply a "good cause" hearsay finding cannot cure the problem.   Whether the hearsay is excluded or admitted again, the result is the same: the State's proof remains insufficient to sustain the revocation.

The governing framework confirms the point.   A probation revocation requires two distinct determinations: first, whether the State proved a violation by a preponderance of the evidence; and second, if so, what consequence should follow.   Tenn. Code Ann. § 40-35-311(d)(1); *State v. Dagnan*, 641 S.W.3d 751, 757-59 (Tenn. 2022).   We review the trial court's ruling for abuse of discretion, affording deference when findings appear on the record.   *See State v. Rand*, 696 S.W.3d 98, 102-03 (Tenn. Crim. App. 2024).   But that deference has limits: an abuse of discretion is established "when the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred."   *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991).

The question here is whether the State's proof here amounted to "substantial evidence" of either absc.sion or willful nonpayment of fines and costs.   As I discuss below, it did not.

## A.    LACK OF PROOF ESTABLISHING ABSCONSION

Turning first to absconsion, the record does not contain substantial evidence to support the trial court's finding.   Although the General Assembly has not defined "absconding," this Court has recognized that the term "go[es] beyond a single missed meeting" and is "defined by the probationer's intent to avoid supervision more generally." *Rand*, 696 S.W.3d at 104-05.   In *Rand*, we identified several nonexclusive factors that may support such an inference, including whether the probationer ignored known communications from supervision, failed to keep officers apprised of contact information, left or remained outside the jurisdiction, acted to avoid arrest or a known order to report, or otherwise engaged in conduct suggesting concealment to evade legal process.   *Id.*

These considerations rest on a necessary predicate: that the probationer was subject to a reporting obligation and knew, or reasonably should have known, what that obligation required.   The State must therefore establish when, how, and to whom the probationer was expected to report, together with some basis to conclude that the probationer understood those expectations.   Without this foundation, missing file entries or the mere passage of time cannot demonstrate willful avoidance.

Measured against this standard, the State's proof fails on three independent grounds. First, the record does not establish the Defendant's reporting obligation during the period at issue.   The State offered no probation order setting out the conditions of reporting and no order modifying them when county supervision replaced the private vendor.   Ms. Bush could not identify any scheduled appointments after November 8, 2019, or explain how the Defendant was supposed to report.   Her testimony was confined to what she found in the file she inherited, and she had no personal knowledge of the supervision history, communications, or outreach.   On this record, the State did not prove that the Defendant "failed to report as directed," because it never established what "as directed" meant in time, manner, or recipient.

Second, the record contains no proof of notice to the Defendant or outreach by supervision.   The State offered no proof of letters, phone calls, or text messages, and no testimony that supervision attempted to visit a last known address or otherwise reestablish contact.   Ms. Bush acknowledged she had no access to call or text records and could not testify about any such efforts.   In *Rand*, by contrast, the affirmative proof of absconsion included precisely these kinds of outreach efforts and the defendant's deliberate nonresponse.   *See id.* at 104-05.   Nothing similar is present here.

Third, the record contains no direct or circumstantial evidence of intent to avoid supervision. Unlike *Rand*, there are no admissions, no proof that the Defendant left or remained outside the jurisdiction to evade process, no evidence of evasion when encountering law enforcement, and no showing of sustained intentional noncontact after notice. The most that can be said is that the county officer did not personally see the Defendant after April 2021 and that the clerk's account reflects no payments. Without proof of a reporting schedule after November 2019 about which the Defendant knew or should have known, this evidence is inadequate to infer absconsion.

The violation warrant's narrative does not fill these gaps. Ms. Bush read the warrant's assertions that the Defendant missed a November 2019 appointment and "has not reported" or made payments "as scheduled." Yet she simultaneously confirmed that she had no personal knowledge of the Defendant's reporting schedule, next report date, appointments, communications, or incarceration status, and that her testimony came solely from the inherited file. Absent proof of the reporting obligation and notice, the lack of post-November entries in a file cannot satisfy the State's burden to prove willful avoidance of supervision. On this record, I would hold that the record fails to contain substantial evidence of absconsion as opposed to a missed meeting.

## B.   NONPAYMENT CANNOT SUSTAIN REVOCATION ON THIS RECORD

Turning to the allegation of nonpayment, the record likewise fails to supply substantial evidence of a willful violation. Tennessee law draws important distinctions here. A defendant may not be imprisoned for failing to pay court costs or litigation taxes. Tenn. Code Ann. § 40-24-105(a); Tenn. Op. Att'y Gen. No. 03-106 (Aug. 22, 2003). As for fines, revocation requires more than proof that payments were missed; it requires proof that the defendant had the ability to pay and nevertheless willfully refused. *See, e.g.*, *State v. Dye*, 715 S.W.2d 36, 39-41 (Tenn. 1986) (so recognizing in the restitution context).

Here, defense counsel underscored this very point at the hearing, objecting that the State had presented no proof of willfulness. That objection highlights what remains true on appeal: the record contains no evidence that the Defendant had the ability to pay but chose not to. The clerk's ledger testimony established only that payments were not made. Standing alone, that is legally insufficient to support revocation on nonpayment grounds. *Cf. State v. Jones*, No. W2017-00241-CCA-R3-CD, 2017 WL 5952920, at *2 (Tenn. Crim. App. Nov. 29, 2017) (upholding full revocation where failure to pay was accompanied by new crimes), *no perm. app. filed*. On this record, I would conclude that nonpayment cannot serve as a basis for revocation.

## C.    REMEDY

The majority remands for the trial court to make a "good cause" finding before admitting hearsay from the violation warrant.   Respectfully, that course fails to resolve the central problem.

First, using the warrant's own allegations as evidence of a violation collapses the essential distinction between pleading and proof.   The warrant serves to charge; the hearing serves to prove.   I am not aware of any case in which a violation has been sustained solely on the strength of the warrant itself, and Tennessee Code Annotated section 40-35-311(d)(1) requires more.   This case should not become the first where the only substantive "evidence" of a violation is the charging document itself.

Second, the issue here is not the absence of a "good cause" finding—it is the absence of proof.   Even if the warrant's allegations were admitted wholesale on remand, the State still could not prevail.   At most, the warrant alleges that the Defendant missed a single meeting.   It does not establish what her reporting obligations were, whether she had notice of them, or whether supervision attempted any outreach.   It does not identify facts supporting an inference that she intended to avoid supervision.   Nor does it allege or prove that she had the ability to pay fines or costs and willfully refused.

In short, the defect here is not the absence of an evidentiary finding but the absence of evidence itself.   Under our standard of review, a probation revocation cannot stand unless the record contains substantial evidence of a violation.   Because this record does not, a remand merely to supply a hearsay finding cannot cure the deficiency.   The proper course is to reverse and vacate the revocation order and dismiss the violation warrant.

## CONCLUSION

In summary, this is not a case where procedural error requires another hearing.   It is one where evidentiary insufficiency requires reversal.   A remand can only yield two outcomes: either the warrant is excluded and the State's case grows weaker, or it is admitted again and the case remains the same.   Neither outcome supplies the missing evidence required to support the revocation order.

Because the deficiency lies not in procedure but in proof, a remand serves no purpose beyond affording the State a second chance to which it is not entitled.   In my view,

the only proper remedy is to reverse and vacate the revocation order and dismiss the violation warrant.

  I respectfully dissent.


             s/ ***Tom Greenholtz***
             TOM GREENHOLTZ, JUDGE