IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2005

## STATE OF TENNESSEE v. DANA LYNN ARMSTRONG

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S43,200      Phyllis H. Miller, Judge**

---

**No. E2004-02495-CCA-R3-CD Filed August 16, 2005**

---

Following a revocation hearing, the trial court revoked the probation of Defendant, Dana Lynn Armstrong, and ordered him to serve the remainder of his sentence in confinement. In his appeal, Defendant argues that the trial court erred in finding that he had violated the terms of his probation, and in revoking his probation and ordering that the sentence be served by incarceration. After a review of this matter, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Stephen M. Wallace, District Public Defender; and Leslie S. Hale, Assistant Public Defender, Blountville, Tennessee, for the appellant, Dana Lynn Armstrong.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; Robert H. Montgomery, Jr., Assistant District Attorney General; and Barry P. Staubus, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

On July 17, 2002, Defendant entered a plea of guilty to two counts of facilitation of the sale of over twenty-six grams of cocaine, a Class C felony. He was sentenced as a Range I, standard offender, to concurrent sentences of six years for each count, all of which was suspended, and Defendant was placed on probation. In addition, Defendant was assessed a total fine of $4,000 for the convictions. As part of the terms of his probation, Defendant agreed, among other things, to obey all laws, including municipal ordinances, to report any arrests, to not use or possess narcotic drugs or marijuana, to pay all fines and costs associated with his convictions, and to report to his probation officer as required.

On October 11, 2002, Defendant filed a motion to waive his fines. This motion was denied by the trial court on November 13, 2002. The trial court ordered Defendant to pay $80.00 per month toward his outstanding fines, beginning December 1, 2002.

On June 28, 2004, a probation violation warrant was issued alleging that Defendant had committed the offense of solicitation of prostitution and had failed to make the monthly payments towards his fines and costs as required by the trial court's order dated November 13, 2002. A second probation violation warrant was issued on July 21, 2004, alleging that Defendant had committed the offense of simple possession of marijuana.

At the probation revocation hearing, Shirley Castelvecchi testified that she was Defendant's probation officer after his probation was transferred from Sullivan County to Knox County. Ms. Castelvecchi first saw Defendant on September 30, 2002. Initially, Defendant told Ms. Castelvecchi that the trial court had waived the payment of fines and costs. When Ms. Castelvecchi asked for documentation supporting his claim, Defendant admitted that his request for a waiver of the fines and costs had been denied.

Ms. Castelvecchi said that Defendant was required to meet with her on a monthly basis. He reported five times, with his last meeting on January 16, 2003. Defendant did not call Ms. Castelvecchi to explain his absences. Defendant was employed at the time he met with Ms. Castelvecchi, but he made only sporadic payments totaling $370.00 toward his outstanding fines and costs. Defendant did not tell Ms. Castelvecchi why he was not making the required payments. Defendant did not report his arrests for solicitation of prostitution and simple possession of marijuana to Ms. Castelvecchi.

On cross-examination, Ms. Castelvecchi denied that she told Defendant that he had been placed on unsupervised probation. She said that her supervision of Defendant was difficult because he had solicited the assistance of Dr. Jeannie Gillian, the Director of the Hope Center, and Dr. John Adams, his physician, to protest his attendance at the monthly meetings. Defendant has acquired immune deficiency syndrome ("AIDS") in addition to encephalitis. Dr. Gillian urged Ms. Castelvecchi to work with Defendant over his failure to make the required monthly meetings because Defendant felt the meetings were "stressful and unproductive." She wrote Ms. Castelvecchi that one meeting was so stressful that Defendant required emergency care at the hospital. Defendant told Dr. Gillian that he was confused over why he had to continue making payments to the court because the fees had been "annulled." Dr. Gillian informed Ms. Castelvecchi that if Defendant was required to attend meetings, he likely would have to be provided reasonable accommodations, including transportation, as required by the Americans with Disabilities Act. Both Dr. Adams and Dr. Gillian were under the impression that Defendant was unable to drive.

Ms. Castelvecchi said that as a result of these communications, Defendant was placed on "treatment status" so that Ms. Castelvecchi would not have to file a violation of probation for failure to report.

Officer Jason Hill with the Knoxville Police Department responded to a call on August 6, 2002, concerning an altercation between two people in an automobile. Officer Hill found Defendant in the car with the woman. Defendant told Officer Hill that he just wanted "oral sex for $10.00," but the woman wanted him to give her cocaine. When Defendant told her he did not have any drugs, an argument ensued. Officer Hill said that Defendant was found guilty of patronizing prostitution in violation of a Knoxville municipal ordinance.

Officer Sean Peoples with the Knoxville Police Department stopped Defendant's vehicle on July 9, 2004, for an inoperable tag light and a loud muffler. He ran a check of Defendant's driver's license and discovered an outstanding warrant for probation violation from Sullivan County. Officer Peoples placed Defendant in the back of the patrol car. Defendant denied he had any contraband and refused to consent to a search of his person and vehicle. Defendant told Officer Peoples that he had been prescribed marijuana for medicinal purposes. Officer Peoples called for a canine patrol officer. The dog indicated that there were drugs in Defendant's vehicle. Officer Peoples discovered two three-gram baggies of marijuana in a pocket in the driver's door, and various prescription medicine, including Hydrocodone, Zanax and Oxycontin.

Defendant then presented his defense. Dr. Gillian testified that the purpose of the Hope Center was to provide support services and counseling to people infected with AIDS. She first met Defendant in 2000. Dr. Gillian said that her letters were intended to simply ask if anything could be done to help Defendant meet the terms of his probation. Dr. Gilliam said that she understood that Defendant was not required to report because of his medical condition.

On cross-examination, Dr. Gilliam admitted that she had not verified the information Defendant relayed to her about his difficulties with Ms. Castelvecchi and the terms of his probation. She conceded that she wrote to Ms. Castelvecchi about the stressful meetings on May 4, 2004, and she was unaware that Defendant had stopped reporting to Ms. Castelvecchi in January, 2003. Dr. Gilliam said that she was not aware that Defendant had a criminal history, and she did not know about his conviction of patronizing prostitution. Dr. Gilliam said that Defendant told her he was unable to drive.

Dr. Adams said that he first began treating Defendant for AIDS in 1994. In 1996, Defendant contracted encephalitis. The disease initially responded to treatment but resurfaced in 2002. Dr. Adams said that the disease, although incurable, was now under control. Dr. Adams said that the Sullivan County Jail had contacted him about Defendant's medication and dosage requirements. It was his understanding that Defendant went for some period of time without his medication when he was first incarcerated. An MRI scan was performed after his incarceration which indicated that Defendant's encephalitis was static and not worsening. Dr. Adams said that he had prescribed Hydrocodone.

On cross-examination, Dr. Adams said that he had not prescribed marijuana for medicinal purposes. Dr. Adams said that he was unaware that Defendant had received prescriptions for Viagra and Oxycontin from another physician. Dr. Adams said that Defendant was actually doing better

than he expected, and there was nothing to indicate that the jail's medical staff could not meet Defendant's needs.

Carolyn Culbertson, the head nurse at the Sullivan County jail, agreed that Defendant's medicines, blood tests, and various procedures were expensive. She was not aware that Defendant had complained that he was not being given his medication properly.

Defendant testified that the woman he was with on August 6, 2002, was aware that he had AIDS. Defendant said that she took his wallet and ran, and he then called the police. Defendant said that he was aware that he could infect a sexual partner with AIDS, but he said that he always used a condom. On cross-examination, Defendant explained that once he told a potential sexual partner that he had AIDS, it was up to the woman to decide whether or not she wanted to have sex with him. Defendant acknowledged that patronizing prostitution was illegal. He denied that the marijuana found in his car on July 9, 2004 was his, and he surmised that his daughter had left the drugs in the car.

Defendant said that Dr. Adams never asked him if he was taking any medicines other than what Dr. Adams prescribed. Defendant said that he started taking Oxycontin after a motorcycle wreck. Defendant said that he did not pay his fines and court costs because he was waiting on the trial court to tell him whether or not he had to pay. Defendant insisted he was willing to pay and had set money aside for that purpose. Defendant said that he requested a waiver of the fees so that he could support his daughter and participate in the Habitat for Humanity program.

At the conclusion of the evidence, the trial court found by a preponderance of the evidence that Defendant had violated the terms of his probation. The trial court accredited the testimony of the police officers concerning Defendant's arrests. The trial court found Defendant not credible, and that he failed to take any responsibility for complying with the terms of his probation.

Defendant argues that the trial court erred in revoking his probation because he did not wilfully fail to comply with the terms of his probation, and he argues that his medical needs will be better served in the community. Defendant also maintains that the preponderance of the evidence does not support a finding that he committed the offenses of simple possession of marijuana and patronizing prostitution.

A trial court is vested with the discretion to revoke a suspended sentence and to reinstate the original sentence if the trial court finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310 and 40-35-311. Accordingly, the trial court's decision will be upheld on appeal unless there has been an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). To find an abuse of discretion in a probation revocation, the record must show no substantial evidence that would support the trial court's decision to revoke probation. *Id*. (citing *State v. Hawkins*, 811 S.W.2d 79, 82 (Tenn. 1991).

Relying on *State v. Dye*, 715 S.W.2d 36, 41 (Tenn. 1986), Defendant argues that his failure to pay his fines and court costs did not constitute a violation of probation because his conduct was not wilful. Defendant contends that there was justifiable confusion over whether or not his probation was "suspended," and, in any event, his medical condition made compliance with the court's payment schedule difficult.

In *Dye*, our Supreme Court stated that if a defendant is required to make restitution as a condition of probation, the trial court must determine the reasons behind a defendant's failure to do so. *Dye*, 715 S.W.2d at 41. If the trial court determines that the defendant's failure to pay is not wilful, and he or she has made genuine efforts to meet the payment schedule, then the trial court may choose not to revoke the defendant's probation. *Id.*

Defendant made payments toward his outstanding fees and court costs on November 5, 2001 and October 24, 2002 before requesting a waiver of the fines and costs. The trial court denied Defendant's motion and ordered Defendant to pay $80.00 per month toward his outstanding fines beginning December 1, 2002. Defendant made four payments after that date on December 4, 2002, January 13, 2003, April 11, 2003, and May 12, 2003, and then he ceased making payments. Defendant testified that he was willing to pay his fines and court costs and had set aside money for that purpose, but that he was waiting on some sort of communication from the court. Substantial evidence in the record supports the trial court's findings that Defendant violated his probation by failing to pay his fines and costs.

Moreover, unlike the situation in *Dye*, failure to pay fines and costs was not the only condition of probation that Defendant violated. Defendant argues that the preponderance of the evidence does not support a finding that he committed the offenses of patronizing prostitution and simple possession of marijuana. Although Defendant admitted that he offered money to his female companion in exchange for sex, the gist of his argument on appeal is that his conduct should be excused because "no one was harmed." As to the charge of possession of marijuana, Defendant denies that he knew the marijuana was in his car. The trial court, however, specifically declined to find Defendant's testimony credible and accredited the testimony of Officers Hill and Peoples. The commission of a crime during probation constitutes sufficient evidence that a violation of probation has occurred. *State v. Gabel*, 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995).

Because there is sufficient evidence that Defendant violated the terms of his probation, the record fully supports the revocation of Defendant's probation.

## CONCLUSION

Based upon our review of the record, we conclude that the trial court did not abuse its discretion in revoking Defendant's probation. The judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE

-5-