IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2, 2009 Session

**STATE OF TENNESSEE v. LAURA JUNE MAYS**

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 6698B     J. Weber McCraw, Judge**

**No. W2008-02144-CCA-R3-CD  - Filed January 25, 2010**

The Defendant-Appellant, Laura Mays, was convicted by a Hardeman County jury of theft of property between $10,000 and $60,000, a Class C felony.  She received a three-year sentence, but was subsequently placed on probation.  Her probation was revoked by the trial court because of her failure to make restitution payments.  In her first appeal, this court reversed the trial court's revocation of her probation and directed the trial court to set a reasonable amount for restitution payments. On remand, the trial court again revoked Mays' probation. Mays now appeals the revocation of her probation, claiming the trial court did not follow this court's mandate from her first appeal.  Upon review, we again reverse the judgment of the trial court, and remand this matter for a determination of Mays' ability to pay restitution.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Wayne T. DeWees, Bolivar, Tennessee, for the Defendant-Appellant, Laura June Mays.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

      **Background**.  On direct appeal, this court summarized the facts and procedural history of this case as follows:

            On October 3, 2002, Appellant was convicted of theft of property between $10,000 and $60,000.  The trial court sentenced Appellant to three

years. The sentence was suspended in its entirety, and Appellant was placed on probation. As part of her probation, the trial court ordered Appellant to make restitution of $42,000 jointly with her co-defendant.

On January 5, 2006, Appellant's probation was extended for two years. The trial court ordered Appellant to pay $500 each month for the first six months and then $1,500 for each month thereafter. The trial court also ordered Appellant to meet the other terms of her probation.

On October 31, 2006, a probation violation warrant was filed. The warrant alleged that Appellant owed $205 in probation arrearage fees and that Appellant had failed to make monthly payments toward restitution. According to the warrant, Appellant owed $30,120 toward restitution and had paid $1,440 at that time.

On January 25, 2007, the trial court held a hearing on the probation revocation. Pakita Hall, Appellant's probation officer, testified that she inherited Appellant's case in 2006. Ms. Hall filed a probation violation warrant based on a technical violation, which was Appellant's failure to make restitution. Appellant had not violated any other provisions of her probation. Ms. Hall stated that in the original judgment, the trial court did not set a monthly payment amount. Appellant had been paying about $50 a month until January 5, 2006, when the trial court extended Appellant's probation by two years and set monthly payment amounts at $500 a month for the first six months and $1,500 a month for the remaining period of probation. At the time Ms. Hall testified at the probation revocation hearing, Appellant was more than $5,000 behind on her payments.

Appellant also testified at the hearing. She stated that at the time of the hearing she was living in a rental house rent free in exchange for making repairs to the house. She stated that she had lost her home that she had owned through the ordeal with her conviction. Appellant also stated that she is married, but they are no longer together. Therefore, she gets no support from her husband. At the hearing, she also testified that her son lived with her in the rent-free home. He is also unemployed. At the time of the hearing, Appellant owned a 1992 Ford Tempo that her mother-in-law had purchased for her. Appellant and her son go out to look for work together because he does not own a car.

At the time of the hearing, she was unemployed and had not had a job since August of 2006. Her income at the time of the hearing was $169 a week

in unemployment benefits. Appellant testified that between 2002 and 2006 she made anywhere from $9,305 to $14,206 a year. Appellant testified as to her monthly expenses. She stated that in December of 2006, she paid $100 towards restitution and $100 on her bond to the bondsman. Appellant also paid an electric bill, telephone bill and purchased groceries. She testified that one month she paid $150 for her electric bill, a $55 telephone bill, $100 for restitution, and $100 on the loan from her bond. Appellant testified that she could not afford to pay more than $100 toward restitution. To obtain her bond when the violation warrant was entered in November, Appellant borrowed most of the money and used one week's unemployment check.

Appellant stated that when she was first put on probation she paid $50 a month in restitution. The trial court's order at that time did not specify a monthly amount for her to pay. After she was revoked and the trial court extended her probation she paid about $100 a month in restitution. She stated that she is unable to pay $500 a month in restitution. She also testified to a sporadic work history. She worked at a retail establishment at $5.50 an hour and a hair product factory at $6.80 to $9.00 an hour. She was fired from the hair product factory due to an altercation with another employee. She stated that she has been unable to find a new job because of her criminal background. Appellant testified that the business owner from whom she stole offered Appellant her job back. Appellant went back to work, but she left because she did not trust herself to work there.

The trial court ordered that Appellant's probation be revoked based upon her failure to pay restitution. The trial court's order stated the following:

> 1. That the Defendant had the ability to pay greater restitution than she has paid through the Clerk's office to date.
>
> 2. That the Defendant's failure to pay a significant amount toward this restitution was willful on her part.
>
> 3. That Defendant has had good employment during the time of her probation that would have allowed her to make significant payments toward her restitution, but lost that employment due to her misconduct.
>
> 4. That Defendant has had good employment offers during the time of her probation, but turned them down due to her fear of working around money. There was no testimony, however, that

-3-

Defendant sought help with any psychological problem that she may have in this area.

5. That Defendant has not made a good faith effort to compensate the victim in this matter.

6. That the initial judgment in this matter clearly makes the Defendant's probation conditional on her payment of restitution.

State v. Laura June Mays, No. W2007-00319-CCA-R3-CD, 2008 WL 1700227, at **1-2 (Tenn. Crim. App., at Jackson, Oct. 3, 2007).

On direct appeal, this court reversed the trial court's decision and remanded the case, stating:

As quoted above, the trial court made specific findings that Appellant had the ability to pay restitution and both willfully failed to pay her restitution and failed to make a bona fide effort to obtain the means to pay her restitution. However, we feel that the evidence preponderates against the trial court's conclusion that Appellant neglected or willfully refused to pay her restitution. The lower court in extending Appellant's probation set the monthly restitution payments at $500 for six months and $1,500 per month for the balance of the probation period. This appears to us to be excessive given Appellant's income and necessary living expenses. Moreover, Appellant's co-defendant was also ordered to pay toward the $42,000 restitution amount. There is nothing in this record to indicate how much that individual has paid thereby lessening Appellant's total debt. As stated above, Appellant was currently unemployed but was actively seeking employment. Even though Appellant's income was about $169 a week from unemployment, she was still making an effort to pay $100 a month toward restitution. Contrary to the trial court's findings that Appellant was willfully refusing to pay, Appellant was in actuality paying as much as she reasonably could based on her income at the time. The trial court also found that Appellant turned down employment which would enable her to pay more toward restitution. Appellant testified that she left this job because she did not trust herself working around money. The trial court concluded that this was not making a bona fide effort to obtain employment to pay restitution. However, we view the fact that Appellant left this job as evidence that her punishment for theft has been somewhat effective. Appellant has of her own volition removed herself from temptation even when faced with the possibility of serving the remainder of her sentence in incarceration. Therefore, under the principles announced in [State v. Dye, 715 S.W.2d 36

-4-

(Tenn. 1986)], we conclude that the trial court should not have ordered the revocation of Appellant's probation without making a realistic assessment of Appellant's ability to pay given her circumstances on remand. Therefore, the trial court's revocation of Appellant's probation is reversed.

The record shows that Appellant is unable to pay $500 a month, much less the $1,500 a month later required. We remand this case for the trial court to make appropriate findings with regard to Appellant's ability to pay restitution and set an amount that Appellant reasonably can afford to pay. All parties may refer to Tennessee Code Annotated section 40-35-304(f) which sets forth the procedure to be followed when modifying a defendant's restitution. We also point out as stated above that the total amount of restitution does not have to equal the victim's pecuniary loss. See [State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994)].

Mays, 2008 WL 1700227, at **3-4.

On remand, the trial court held a second revocation hearing. Mays testified that since the first revocation hearing, she had not made any restitution payments. She denied testifying at the first revocation hearing that she quit her job at the finance company because she did not trust herself to work there. Instead, Mays said she was fired from that position. After her termination, Mays said she worked for Avon. She left that position to work for Bolivar Ford. Mays testified that she was fired from Bolivar Ford because she missed a day of work and failed to speak with someone at the dealership about her absence.

Mays testified that she was currently unemployed. She claims she applied to numerous jobs and went to the unemployment office on a regular basis. She struggled to find work because of her criminal history. Mays said she stopped making restitution payments based on this court's decision on direct appeal. She was waiting for the trial court to reset the payment amount. Mays testified that she spends $780 a year on cigarettes, and $360 annually on dog food. Mays also testified that she pays for internet service at her home.

Following Mays' testimony at the second revocation hearing, the trial court again revoked her probation. It stated that its directive on remand was to "make a realistic assessment of . . . Mrs. Mays' ability to pay." The trial court found that Mays was not a credible witness and continued "to manipulate the system." It focused on Mays' contradictory testimony about her departure from the finance company. The trial court stated:

Rather than considering that she left the job, in fact, her testimony is greatly different today, she didn't leave the job, she was terminated. So while giving her . . . a pat on the back for removing herself from temptation, she didn't. She was terminated.

The trial court also considered the money Mays spent on cigarettes, dog food, and the internet. It concluded that Mays had not "made a good faith effort to pay restitution; not the full restitution, but a reasonable rate of restitution." Consequently, it again revoked Mays' probation.

## ANALYSIS

**I. Probation Revocation**. Mays claims the trial court did not follow the mandate issued on direct appeal. Mays argues that the mandate only authorized the trial court to set an appropriate rate of monthly restitution. The State contends the trial court was permitted to revoke Mays' probation based on her testimony at the second revocation hearing about her termination from the finance company. Following our review, we agree with Mays.

On direct appeal, this court determined that "the evidence preponderates against the trial court's conclusion that Appellant neglected or willfully refused to pay her restitution." Mays, 2008 WL 1700227, at *3. On remand, we previously directed the trial court to "make appropriate findings with regard to Appellant's ability to pay restitution and set an amount that Appellant reasonably can afford to pay." Id. at *4. The trial court did not follow the limited remand in this case. We recognize that Mays presented conflicting testimony regarding her departure from the finance company; however, the sole purpose of the limited remand was for the trial court to determine Mays' ability to pay restitution and to set the amount for restitution payments. Accordingly, we reverse the judgment of the trial court and remand this case to conduct a hearing to determine Mays' ability to pay her restitution. Consistent with our previous remand, we further instruct the trial court to set a reasonable amount of restitution payments based on Mays' ability to pay.

## CONCLUSION

Upon review of the record, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.

_____
CAMILLE R. MCMULLEN, Judge