# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 6, 2011

## STATE OF TENNESSEE v. BRYAN K. WATKINS

### Appeal from the Circuit Court for Dyer County
### No. C05-327     R. Lee Moore, Judge

### No. W2011-01688-CCA-R3-CD  - Filed February 27, 2012

The defendant, Bryan K. Watkins, appeals the revocation of his probation, arguing that the trial court abused its discretion by basing its revocation decision on his failure to pay court costs and supervision fees without also making a determination that the nonpayment was willful.  Following our review, we affirm the judgment of the trial court revoking the defendant's probation and ordering that he serve the balance of his sentence in confinement.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and JEFFREY S. BIVINS, JJ., joined.

James E. Lanier, District Public Defender; and Cristy C. Cooper, Assistant Public Defender, for the appellant, Bryan K. Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen W. Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On February 8, 2006, the defendant pled guilty in the Circuit Court of Dyer County to possession of over .5 grams of cocaine with the intent to sell or deliver, a Class B felony. The defendant was sentenced as a Range I, standard offender to eight years in the Department of Correction, with his sentence subsequently suspended to supervised probation.

On February 15, 2011, a probation violation report was filed alleging that the defendant had violated the conditions of his probation by failing to provide proof of employment or job search, failing to report as scheduled to his probation officer, and failing to pay required supervision fees, court costs, and fines. At the revocation hearing, the defendant's probation officer, Justin Tubbs, testified that the defendant was transferred to his supervision on December 28, 2009. He said that there were seven different months during his period of supervision when the defendant failed to provide employment verification or proof of job search. In addition, the defendant failed to report on his scheduled report date a total of fifteen times – thirteen times while he was being supervised by Tubbs and twice while supervised by Tubbs's predecessor. The defendant sometimes called to reschedule and sometimes did not. One of the dates on which the defendant failed to appear was April 14, 2010, when an "early intervention" designed to help the defendant get back into compliance, known as an "administrative case review committee" or "ACRC," was scheduled. The next time that the defendant appeared, he attempted to excuse his absence by telling Tubbs that his mother had failed to give him the letter informing him of the April 14 ACRC meeting. According to Tubbs, the defendant was consistently "very confrontational" in his attitude toward him and his efforts to help bring him into compliance with the terms of his probation.

Tubbs testified that the defendant was $85 in arrears in supervision fees at the time he filed the probation violation report but since that time had brought the payments current. He said the defendant had made only three $10 payments toward his court costs from December 2009 until the date of the probation report and, as of April 29, 2011, had paid a total of only $394, leaving an outstanding balance of $1450.

Tubbs acknowledged that the defendant never failed a drug test and that he reported to him at least once a month, with the exceptions of the months of February and November 2010, when he failed to report at all. He further acknowledged that the defendant told him that his work schedule as a truck driver created difficulties for him in making his report dates. He said that the defendant was given a second supervisory intervention meeting after he missed the first, at which Tubbs's supervisor informed him that if he came into compliance by paying his fees and court costs and was placed on minimum supervision for three months, he could, pending the district attorney's approval, be placed on their "Interactive Offender Tracking System," which would allow him to mail his court costs and fees and report by calling a toll free number. Tubbs said that he received the district attorney's consent but that the defendant never met the requirements for the program because "[h]e wasn't paying supervision fees, he wasn't paying court costs, he wasn't providing employment verification each month, and he wasn't reporting as scheduled." Although he conceded that the defendant informed him that he was unable to pay all his court costs, he pointed out that the defendant also completely failed to report during the entire month of November, which was the month that followed the October 25, 2010 intervention meeting.

The defendant's mother, Janice Young, testified that the defendant lived with her in her home. She said she owned her home outright and thus did not have any rent or mortgage to pay, but she relied on the defendant to help supplement her $922 monthly disability income, which he did by "sometimes [paying] light bills and stuff like that."

Randall Young, owner of a small dump truck business, testified that the defendant had been working for him for the past three weeks. He estimated that, on a good day, the defendant could earn approximately $100 driving one of his dump trucks.

The defendant blamed his failures to report as scheduled and to pay his court costs and fees on his struggle to find work and the long hours involved in the short-lived truck driving jobs he had been able to find. He said he had worked three months each for two different logging companies, but the work had dried up at both companies. He also expressed his irritation at the probation board, which he apparently felt did not understand the time constraints involved in the nature of his work:

> That's what I was doing [hauling logs] when . . . I was brought . . . in front of the board, probation board, and told them, I said, you know, I do the best I can to get here. I said but that log truck's sitting out there and if anybody would like to go with me anytime, we start at 4 o'clock in the morning and be lucky to be home by 7 or 8 o'clock at night.

The defendant, who said that his gross income in 2010 was only $16,000, testified that he was unable to pay his court costs in full. He could not recall why he failed to report in November but said it could have been because he was working as a truck driver in Nashville during that time. He thought he had made a telephone call to arrange a different report time but was unsure if he had. Finally, he expressed his belief that, with his new local trucking job, he would be able to make his meetings if his probation officers would only "work with [him]."

At the conclusion of the hearing, the trial court revoked the defendant's probation and ordered that he serve the balance of his sentence in confinement, finding that the defendant had violated the terms of his probation by not reporting as scheduled, not providing the job information requested by his probation officer, and not paying his required fees and costs.

## ANALYSIS

The defendant argues on appeal that the trial court abused its discretion by basing its revocation decision on his failure to pay his court costs without making the required finding that his nonpayment was willful. The State responds by arguing that the trial court properly

revoked the defendant's probation after finding that he failed to comply with the terms of his probation, which included not only his failure to pay but also his repeated failures to report as scheduled and to provide proof of employment and/or job search. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2010). The revocation of probation lies within the sound discretion of the trial court. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). When the defendant's violation of probation is based on failure to pay restitution or fines, the trial court must determine the reasons behind the failure to pay. State v. Dye, 715 S.W.2d 36, 40 (Tenn. 1986). If the court finds the nonpayment results from either the defendant's willful refusal to pay or his failure to make bona fide efforts to obtain the means to pay, the defendant's probation may be revoked. Id.

In this case, the trial court based its revocation decision on a finding that the defendant had failed to comply with the conditions of his probation by his failure to report, his failure to provide his probation officer with his employment information, and his failure to pay costs and fees. Implicit in the trial court's ruling is a finding that the defendant's failure to pay was the result of either his willful refusal to pay or his failure to make bona fide efforts toward payment. The trial court's ruling states in pertinent part:

> I've read over this supervision or history of the supervision, and you either just don't care or you're not going to be bothered. And I can't tell which it is. But it's very obvious that you're not cooperating. You're reporting when you want to report. You're not reporting when you're supposed to report. And evidently, when you do go in there, you go in there with an attitude. You're not - - you know, you're working part-time and you're not working full-time, but you don't carry in the information you have to carry in, as far as what work you're trying to get or what work you have had. You're either working and not paying, or you're not working and not reporting. You simply are not

following the terms and conditions of your probation. I'm not going to have it. Your probation is revoked.

We conclude that the record fully supports the trial court's findings and conclusions. Accordingly, we affirm the trial court's full revocation of the defendant's probation.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering that he serve the balance of his sentence in confinement.

_____

ALAN E. GLENN, JUDGE