IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 9, 2024 Session

## STATE OF TENNESSEE v. JOSHUA LYNN DAMESWORTH

**Appeal from the Circuit Court for Henry County**
**No. 40CC1-2015-CR-15488        Bruce I. Griffey, Judge**

_____

### No. W2023-00825-CCA-R3-CD
_____

The Defendant pleaded guilty to theft of property and was placed on judicial diversion for five years and ordered to pay $167,000 in restitution to the victim. The Defendant failed to pay the entire amount of restitution, and the trial court revoked the Defendant's sentence and ordered him to serve a five-year prison sentence. On appeal, the Defendant challenges the trial court's finding that his failure to pay the entirety of the restitution prior to the expiration of his sentence was willful. After review of the record, we reverse the trial court's revocation order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J. and JOHN W. CAMPBELL, SR., J., joined.

M. Todd Ridley, Assistant Public Defender – Appellate Division (on appeal), Franklin, Tennessee, and Kaylee Houston (at hearing), Camden , Tennessee, for the appellant, Joshua Lynn Damesworth.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; J. Neil Thompson, District Attorney General; and Stephanie J. Hale, and Courtney M. Crocker, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a probation revocation based upon the Defendant's failure to complete payment of restitution to the victim before the expiration of his sentence. The underlying sentence is based upon the Defendant's September 1, 2015 guilty plea to the reduced charge of theft of property valued between $10,000 and $60,000, a Class C felony.

The trial court granted judicial diversion and placed the Defendant on State probation for five years, with payment of $167,000 in restitution to the victim as a condition of probation.

On February 2, 2017, the Defendant's probation officer, Arlisa Michelle Wade, filed a Probation Violation report, alleging that the Defendant had received new charges related to neglect of his stepchildren. After a hearing, the trial court terminated the Defendant's judicial diversion and sentenced the Defendant to a five-year term of State supervised probation. The restitution requirement continued to be a condition of probation.

As the expiration of the Defendant's probation sentence neared, Ms. Wade filed a second Probation Violation Report based upon the Defendant owing $1,227.00 in supervision fees and $160,468.00 in restitution. On April 13, 2022, after a hearing, the trial court partially revoked the Defendant's sentence, extended the Defendant's sentence one year, and returned the Defendant to supervised probation. The restitution remained a condition of probation.

Almost a year later, Ms. Wade filed a third probation violation report, alleging that the Defendant had failed to complete payment of the total restitution amount. The report noted, "The offender has maintained gainful employment, reported as instructed, passed all drug screens, and made monthly payments of $100.00 toward his restitution."

The trial court held a hearing on May 5, 2023, and found the Defendant indigent for purposes of appointing counsel for the hearing. Appointed counsel asked the trial court to pass the case until "second call" based upon a proposed resolution. When the case was called again, defense counsel announced an agreed resolution: the State agreed to dismiss the violation warrant, and the Defendant agreed that any amount remaining on his restitution obligation would become a civil judgment.

The trial court then questioned the Defendant about his income, employment, and marital status before continuing the case to June 2, 2023, with the instruction that the Defendant continue to report to probation and make restitution payments.

At the June 2, 2023 hearing, the parties presented the following evidence: The Defendant's probation officer, Ms. Wade, testified that she had worked as a probation and parole officer for twenty-two years. She had supervised the Defendant's probation since 2016 and confirmed that he had a five-year sentence that had been extended a year. According to Ms. Wade, the Defendant continued to pay restitution as well as probation fees. She agreed that the Petitioner was "an excellent probationer" with whom she had had no issues. Ms. Wade noted that the only issue had been the Defendant's failure to pay the full amount of restitution ordered. She confirmed that the Defendant had "consistently

2

paid" one hundred dollars monthly during his sentence but was still left with a remaining balance of $159,462.00.

Ms. Wade testified that the Defendant worked in construction and was married. She stated that the Defendant's wife was unable to work due to health issues and that the couple lived a "moderate" lifestyle. The Defendant was the sole provider of the household and paid child support for one child. She had not observed the Defendant buy any "luxury items" or make excessive purchases during her supervision of him.

On cross-examination, Ms. Wade confirmed that the Defendant was unable to work as "a full blown contractor" while serving a probation sentence. Further, the Defendant could not seek a license as an electrician or an HVAC technician due to his status as a probationer. She agreed that, if the Defendant wanted a job with greater income allowing him to pay more toward restitution, he was somewhat restricted due to his probation status. When asked if the Defendant's efforts to pay restitution were "less than satisfactory," she responded, "I have no reason to believe that he has the means to pay more."

Upon questioning by the trial court, Ms. Wade confirmed that the Defendant made "about minimum wage" and worked forty hours a week at Damesworth Construction, a business owned by his father. When asked whether the Defendant lived with his parents, Ms. Wade stated that the Defendant rented a residence "in town." The trial court then inquired whether the Defendant received a W-2 from "his daddy," whether he had filed tax returns each year for the last five years, and whether he had received a raise during the time he was employed by "his daddy." Ms. Wade did not know the answers to those questions. When asked if there was a reason why the Defendant did not get a second job, Ms. Wade stated that she was not aware of one.

The trial court then stated, "[t]he actual plea agreement said that [the Defendant] would be allowed to travel out of the district if he needed to, cause - - to get employment as an ability to try and get a job and pay back restitution. . . . And he's only paid a hundred dollars a month, every month this entire five year period. Correct?" Ms. Wade responded, "Correct."

The State offered no further proof, and the trial court then asked if the defense had any proof. Defense Counsel responded, "nothing further, Your Honor," and the trial court stated, "[l]et's have the Defendant to be sworn. I want to ask him some questions." Defense Counsel stated that the Defendant did not intend to testify, and the trial court responded that because the Defendant was "under the control of the Court. He's required to answer questions of the court." After speaking with the Defendant, defense counsel stated, "my client would like to state for the record that he objects to the Court's calling him as a witness." The trial court noted the objection, and stated, "[Defendant], would

3

you, please, come forward and take the stand then or you can refuse to answer if you wish. It's your choice sir." Thereafter, the Defendant was sworn in.

The trial court examined the Defendant as follows:

Court: [Defendant], as part of the plea agreement in this case, you agreed to pay back restitution in the amount of one hundred and sixty seven thousand dollars ($167,000.00), approximately, to the victim in this case, did you not?

Defendant: Yes, sir.

Court: Alright. During that entire period[,] you've been on probation, you've been working for your dad. Is that correct?

Defendant: Yes, sir.

Court: And it's your position that you only get paid approximately three hundred bucks ($300) a week, which is minimum wage for forty (40) hours a week. Correct?

Defendant: Yes, sir.

Court: Did you ever get a second job while you were doing all this?

Defendant: No, sir.

Court: Is your wife on disability?

Defendant: Yes, sir, she's - - -

Court: Does she get disability payments?

Defendant: She just got them started. I can't remember the exact date.

Court: Does your dad pay you by check, or cash, or what?

Defendant: It just depends with him. Sometimes it's check and sometimes it's cash.

Court: Does he issue you a W-2 at the end of each year?

4

Defendant:   No, sir.

Court:   No W-2.  Do you file your taxes every year?

Defendant:   I haven't made enough money the past three (3) years to file any taxes.

Court:   Does anything prevent you from getting a second job to try and pay off restitution in this case?

Defendant:   I've had a lot of stuff come up with my wife.  She's had multiple surgeries that I've had to be at home to be able to take care of her.

Court:   Do you rent or own your home?

Defendant:   I rent, sir.

Court:   How much is your rent a month?

Defendant:   Six fifty ($650.00).

Court:   Six fifty ($650.00)?

Defendant:   Yes, sir.

Court:   Do you live near your father's and mother's place?

Defendant:   No, sir.

Court:   How far away do they live from you?

Defendant:   I live over by the Health Department and he lives out off 77.

Court:   And is your dad a contractor or house contractor?

Defendant:   Yes, he is.

Court:   And that's what your line of work has been?

Defendant:     Yes, sir.

Court:          And how old are you?

Defendant:     I'm thirty-five (35).

Court:          And you're what, two thirty (230) or somewhere, a great big guy?

Defendant:     Yes, sir.

Court:          Okay. How far did you go in school?

Defendant:     High school.

Court:          Did you get any certifications and everything prior to this case coming up?

Defendant:     No, sir.

Court:          But you had experience.  How old are you now?

Defendant:     Thirty-five (35).

Court:          And how many years have you been in the workforce?

Defendant:     At least fifteen (15), sixteen (16).

Court:          Okay.  Is your work history, experience, is that related to construction and so forth?

Defendant:     Yes, sir, that and fiberoptic work.

Court:          And throughout this period that you've been on probation, you've been unable to get a raise or any other higher paying job than seven fifty ($7.50) per hour working for your dad?

Defendant:     I just got a raise about a month and a half ago.

6

Court: Okay, but prior to this court hearing today, during this entire period, you weren't able to get another job or a better paying job than minimum wage from your dad?

Defendant: Like I said, I was having to take care of my wife and it worked really well for me to be able to care for her during the time of need.

Court: Very well.

The State declined to ask the Defendant any questions, but defense counsel cross-examined the Defendant. On cross-examination, the Defendant testified that he contacted the appropriate state office to become a licensed electrician, but he was told that he could not obtain a license while serving a probation sentence. The Defendant agreed that he could earn a greater income as an electrician. The Defendant also inquired about becoming licensed as an HVAC technician and learned that the State precluded applicants who were serving a probation sentence. A job as an HVAC technician would also provide a greater income than he was receiving in his current job.

The Defendant agreed that, at the last court hearing, he had stated his willingness for a civil judgment to be entered against him for the remaining restitution. He affirmed his willingness to have a judgment entered against him for the remainder of the restitution owed. The Defendant said that he would then pursue being licensed as an electrician or HVAC technician to allow for increased income.

The Defendant testified that, in recent years, his wife had had five surgeries including a hysterectomy. The last surgery related to spinal fluid that had moved to her brain. Following these surgeries, his wife was not mobile and required his assistance during her initial recovery. The Defendant confirmed that he paid child support in the monthly amount of $270.00 and was current on his payments.

Following the Defendant's testimony, the trial court offered the parties the opportunity to argue their positions. The State declined, stating,

[T]he State attempted to dismiss this last time. I was just going to put on proof as the Court requested.

So it's our intention to dismiss this. Pursuant to the statute 40-35-308, we have to prove intentional failure to pay restitution despite having the ability to pay, and I just don't think that the State has that ability, and at this time we ask to dismiss it. We tried to dismiss it our last court date.

The trial court responded that based on *State v. Dye*, "the State may be perfectly justified in imposing imprisonment as a sanction." The trial court then told defense counsel to make her argument. Defense Counsel argued that the State had failed to prove, pursuant to Tennessee Code Annotated section 40-35-309, that the Defendant had intentionally failed to comply with the restitution order, despite having the ability to pay. Defense counsel argued that the Defendant was an excellent probationer with no probation violations other than monetary violations. The Defendant had consistent employment, paid toward restitution, probation supervision fees, and court costs. He was the sole caretaker for his disabled wife, who received Social Security benefits, and he paid child support. Defense counsel reiterated the Defendant's willingness to accept a civil judgment for the remaining restitution, which could be used by the victim to garnish his wages.

The trial court then made the following findings:

> The Court disagrees and finds that [the Defendant] has willfully failed to pay the restitution ordered in this case. He's had the ability for five (5) years now to get a better paying job than minimum wage. He's a[n] able bodied man with experience in construction trade.
>
> He's only paid a hundred dollars ($100.00) the entire period and it's the Court assessment, and conclusion, and finding that he has intentionally worked for his dad. He doesn't even give him a W-2 as a means to avoid having any money that's collectable to pay restitution.
>
> He's made no effort to get a second job to try to pay this off and he's simply going to wait this out, and the victim in this case is out one hundred and sixty something thousand dollars ($160,000.00), and [the Defendant]'s out nothing.
>
> The Court finds that he's willfully failed to pay restitution. The Court finds that he's violated the conditions of probation that he pay restitution. The Court's going to revoke his probation. Remand him to the custody of the Tennessee Department of Corrections [sic] to serve the balance of his sentence.

In a subsequent July 13, 2023 order *nunc pro tunc* to June 2, 2023, the trial court added that "[a]ny other disposition short of a full revocation would undermine the seriousness of the offense, the importance of fully complying with the Court's orders while on probation and the importance of fulfilling the [sic] all terms of any plea agreement a

8

defendant entered into with the State as part of the bargain in exchange for a lesser sentence." The trial court concluded that the only "appropriate action" was full revocation.

Before the filing of the July 13, 2023 order, on June 6, 2023, the Defendant filed a notice of appeal to this Court followed by a June 23, 2023 motion for reduction of sentence. The Defendant sought a modification of the revocation order and a finding that his probationary term had expired. The trial court held a hearing on July 5, 2023. The Defendant provided several bases on which it relied in asking the court to return the Defendant to probation to finish the seven days remaining on his sentence. The trial court asked for the State's argument and the State responded, "Your Honor, the State's position is as it has been, [ ] that this matter should have been dismissed. [W]e also have no objection to him getting all of his successful probation time." The trial court denied the motion and the Defendant's request for credit on his sentence for the time successfully served on probation.

The Defendant filed a second notice of appeal on the denial of his motion for a sentence reduction. The two appeals were subsequently consolidated.

## II. Analysis

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. T.C.A. §§ 40-35-310, -311; *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A. §§ 40-35-308(c) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn.Crim.App.1991).

Before a trial court may revoke a defendant's probation for failure to make restitution, the trial court must determine the underlying reasons why the defendant did not pay. *State v. Dye*, 715 S.W.2d 36, 40 (Tenn. 1986) (citing *Bearden v. Georgia*, 461 U.S. 660, 668 (1983)). In *Dye*, our supreme court held that a trial court must make specific findings when revoking a defendant's probation due to failure to pay restitution as a condition of probation. *Id*. If the trial court finds that the "defendant ha[s] neglected or willfully refused to pay," including making bona fide efforts to obtain the means to pay restitution, then probation may be revoked. *Id*. at 41 (citing *Bearden*, 461 U.S. at 674). However, if the defendant does not have the ability to make restitution payments and makes no effort to obtain the means to pay, the trial court must find that "alternatives to

9

imprisonment were inadequate to meet the State's interests in punishing the offender." *Id*. If these findings are not made by the trial court, the defendant must be allowed to remain on probation. *Id*. at 41.

As quoted above, the trial court found that Defendant willfully failed to pay restitution and failed to make sufficient bona fide efforts to obtain the means to pay restitution. Our review of the record, however, shows that there is no substantial evidence to support the trial court's conclusion that the Defendant neglected or willfully refused to pay restitution. *See State v. Shafer*, 45 S.W.3d 553, 555 (Tenn. 2001). The Defendant testified that his income was about $300 per week, with expenses of $650 per month rent and $270 per month child support. He consistently paid $100 per month toward restitution. His conviction limited his ability to increase his earnings, and his wife did not work outside the home due to medical issues. This testimony was not challenged by the State and was supported by the probation officer's testimony. We note that the State had the burden of proving that the Defendant neglected or willfully refused to pay restitution, and the State candidly admitted to the trial court that it could not meet its burden. We agree. Therefore, the trial court abused its discretion in revoking the Defendant's probation.

The trial court found that the Defendant failed to secure a second job to pay more toward restitution. The Defendant and his probation officer, Ms. Ward, testified about the Defendant attempting to gain employment that provided greater income enabling him to pay more toward restitution. Both testified that his status as a probationer was an impediment to these efforts. Further, the Defendant testified that his decision to work for his father was in part due to the medical needs of his wife at home. Ms. Ward confirmed that the Defendant was the sole provider for his household due to his wife's medical issues. In our view, this is evidence that the Defendant could not pay the total amount of restitution in six years despite sufficient efforts to do so. As such, "the court must consider alternative measures of punishment other than imprisonment." *Dye*, 715 S.W.2d at 39 (quoting *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983)).

Finally, the Defendant was willing to accept a civil judgment for the remainder of the restitution owed. This would allow him to work and the victim to continue to receive restitution. In D*ye,* the Court held that, "[o]nly if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay." *Id.* at 40. As the trial court correctly noted at the probation violation hearing, the legislature has provided a resolution for situations exactly like the one before us. Tennessee Code Annotated section 40-35-205 (H)(1) provides, "upon expiration of the time of payment or the payment schedule imposed pursuant to subsection (c) or (g), if any portion of restitution remains unpaid, then the victim . . . may convert the unpaid balance into a civil judgment in accordance with the procedure set forth in this subsection (h)." At the time of the revocation, the Defendant

10

had seven days left on his sentence. The only remaining State interest in the Defendant's punishment would have been the restitution. We note that the State repeatedly requested a dismissal of the probation warrant, which we assume was to allow the Defendant to continue to work to satisfy the restitution, the State's remaining interest in the punishment. The alternative measure of seeking a civil judgment was not inadequate under these circumstances and, in fact, was preferable to the interested party – the State.

Therefore, under the principles announced in *Dye*, we conclude that the trial court erred by revoking the Defendant's probation. Accordingly, the trial court's revocation of the Defendant's probation is reversed.

### III. Conclusion

After a thorough review of the record, arguments, and relevant authorities, we vacate the trial court's judgment revoking the Defendant's probation and dismiss the probation violation warrant. Because at the time of the revocation, the Defendant had only one week to serve, it appears the Defendant has served his sentence.

_____
ROBERT W. WEDEMEYER, JUDGE

11